[Civ. No. 5330. Second Appellate District, Division One.—April 27, 1928.]

J. A. BOOMER et al., Respondents, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Appellant.

Roy V. Reppy and E. W. Cunningham for Appellant.

James L. Allen and James L. Davis for Respondents.

HAHN, J., *pro tem.*—This is an appeal by the defendant from a judgment entered upon a jury's verdict for the plaintiffs for damages suffered by reason of the destruction by fire of certain household furnishings belonging to the plaintiffs and located in a dwelling occupied by them as their home.

The complaint alleges that the defendant without right or permission so to do attached its "high-powered electric service wires" to plaintiffs' house for the purpose of serving electric energy to a house located upon an adjacent lot; that the said wires were so defectively, negligently and carelessly attached to plaintiffs' house, and were so defectively and negligently maintained thereon that the said house and the furnishings therein contained were destroyed by fire on March 9, 1924; that the fire "was caused by the said energized electric wires," and that at the time of the fire plaintiffs were occupying said house and had certain furnishings and personal property therein, all of which were destroyed by said fire through the careless and negligent acts of said defendant.

The answer admits that defendant attached its wires to plaintiffs' house, but denies that said wires were high-powered or other than the usual service wires used in connection with furnishing electric energy to dwelling-houses for lighting purposes. The answer further denied all of the other material allegations of the complaint and in addition sets up an affirmative defense in the nature of a plea in abatement, alleging that the plaintiffs herein with one L. A. Boomer did on the fourth day of September, 1924, file an action in the superior court in and for the county of Orange, for the purpose of collecting a claim of $3,500 as damages alleged to have been suffered by the said named plaintiffs by reason of destruction of their house by fire; that the house therein described and referred to is the same house described as destroyed by fire in the instant case, and its destruction was caused by the same fire which resulted through the same circumstances as alleged in the instant case causing the

destruction of plaintiffs' furniture. The defendant further alleges that a judgment was rendered in the aforesaid referred to action in favor of the plaintiffs herein and their son, L. A. Boomer, for the sum of $2,500, and that an appeal has been perfected from the said judgment to the supreme court of the state of California.

Upon the submission of the case to the jury a verdict was returned in favor of the plaintiffs for the sum of $1,000. From the judgment entered upon this verdict the defendant appeals.

From the evidence in the record the following undisputed facts may be gleaned:

In the early morning of March 9, 1924, as day was breaking, the dwelling-house occupied by the plaintiffs, and which was jointly owned by plaintiffs and their son, L. A. Boomer, was destroyed by fire, together with a large portion of the furnishings located therein owned by the plaintiffs. The house had recently been constructed, and had been occupied but a few months prior to the conflagration. On January 1, 1924, J. A. Boomer, one of the plaintiffs, signed a written request to the defendant company, which is a public utility distributing electric energy in that locality to connect their house with electric wires for lighting purposes. About the same time, a similar request was made of the defendant by a neighbor whose house was about 20 feet distant from plaintiffs' house. Defendant had a power line some 250 feet from plaintiffs' house, and on January 25th, for the purpose of supplying plaintiffs and the neighboring house with electric current for lighting purposes, ran two service wires from its power line and connected the service lines by porcelain spools to the ends of the rafters on the northeast corner of plaintiffs' house. From this point the service wires ran up toward the gable and under the overhanging eaves to a point where they were fastened again to porcelain spools which in turn were attached to a false beam nailed on to the rafters. From this point the wires were strung to the neighbor's house.

At the time of the fire plaintiffs' house had not yet been connected with the service wires, the reason appearing for the delay being that the plaintiffs had failed to furnish or construct a meter-box in which the defendant was to install its meter. The neighboring house, however, was connected

with the service wires and used electric energy carried over them for four or six weeks prior to the fire.

Attached to one of the poles on the defendant's power line, and at a point not far from where the service lines attached to the feed line, was a 5-kilowatt transformer such as is usually used for reducing the electric current from 2,200 volts, as carried on their feed lines, to 110 volts carried on the service lines. This transformer was equipped with 5-M spring fuses which served the purpose of breaking electric connections in the event that an excessive voltage passed from the feed lines into the service lines. The service lines were insulated and of the size and character usually used for such purposes. It further appears that the service wires, as they approached plaintiffs' house and were carried along from the ends of the rafters to a point under the eaves from which they left respondents' house for the neighboring house, at no point were nearer to each other than 12 inches. There is some testimony in the record that one of the insulated service wires touched the false rafter near the porcelain spool to which this wire was attached.

There is no direct evidence as to how the fire was started. Early in the morning, just about daybreak, plaintiffs were aroused by someone calling "fire." On reaching the outside of the house they found that the roof was on fire, the fire burning under the eaves and running up toward the ridge of the gable. Apparently the fire was first observed by one Emma J. Williams, who stated that she lived "straight east two long blocks from plaintiffs' house, and that there was nothing to obstruct her view of plaintiffs' house." She further testified that on the morning in question she got out of bed and pulled up the shade of her bedroom window to see if it was daylight, and then for the first time observed a light located apparently on plaintiffs' house, which "looked unusually large to me for an ordinary electric light." She stated that she then remarked to her husband that the light did not look like an arc light, and that she believed it was a fire, and that upon further observation she thought that the light she saw was a blaze coming out of the roof of plaintiffs' house. She stated that she did not remember seeing any smoke at first, but that later she saw some smoke; that the light as she first saw it was quite pale and not red, and fixed the location of the light as on the northeast corner

of plaintiffs' house "right up on top of the eaves." The only other testimony in the record describing the fire is that of the plaintiffs and their son, who first observed the fire when it was well under way, burning up the end gable and through the roof. The witnesses all. place the fire at its outset as burning in the vicinity of the northeast corner of the roof where the two service wires were attached.

Among the witnesses for the defendant were those who had charge of the stringing of the service wires and the general oversight of the maintenance of the line. Their testimony to the effect that the wires used were new insulated wires of the character, size, and quality usually used for such purposes, and that the same were strung and attached to the house in the manner provided by the best usage and by the National Board of Fire Underwriters, was not disputed. Testimony was also offered to show that after the fire the service wires and the transformer were carefully examined; that the wires showed that there had been no short circuit, and the transformer was neither burned out nor were any of the fuses exploded; that there was nothing from an examination made of the wires and the transformers after the fire that indicated that there had been any excess voltage pass over the service line. The defendant's evidence further showed that prior to the fire no trouble had been reported to the defendant company affecting the service wires in question, and that they had served without trouble the neighboring house with electric energy for lighting purposes. In addition to this evidence, as to the conditions of the wiring and transformer, defendant offered the testimony of three expert witnesses, who gave it as their unqualified opinion that under conditions existing, as testified to by the witnesses in relation to the character and condition of the service wires before and after the fire, the manner in which they were connected to the house, the condition of the transformer before and after the fire, and all other matters presented in evidence relating to the service wires and their attachment to the house, it was impossible for the fire to have been started from the service wires. No expert testimony was offered by the plaintiffs to refute the opinions given by defendant's experts. To discuss in detail the reasons given by these expert witnesses for their conclusion would extend this opinion to unwarranted length without serving any useful purpose.

■ The jury undoubtedly inferred from the fact that the fire was first seen burning near where the wires were attached to the house, there being no other explanation offered for the fire, that it must have started from the electric wires. It is a matter of common knowledge that when mystery surrounds the origin of a fire "defective electric wires" are invariably charged as the cause. The inquiring lay mind, seeking an explanation, will often, in the absence of specific information, dignify a guess with the assurance of a conclusion. Possibly the evidence presented in the instant case might have gained judicial sanction for this custom were it not for the undisputed evidence given by the electrical experts that the fire could not have been started from the service wires under the conditions existing as appeared in the evidence. ■ Assuming, for the sake of argument, that the evidence in the case justified more than a guess as to the cause of the fire, and that the evidentiary facts supported an inference that the fire was caused by the wires, we are met with the rule as emphasized in the case of *William Simpson Construction Co.* v. *Industrial Acc. Com.*, 74 Cal. App. 239 [240 Pac. 58], "that whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue." This rule would seem to be particularly applicable in the instant case. As already pointed out, the meager facts bearing upon the origin of the fire hardly justify more than a guess that the fire was caused by the service wires. Respondents lay emphasis on the testimony of the witness Emma J. Williams to the effect that the light she first observed gave forth no smoke, but was quite pale in color. This, respondents urge, would justify the inference that the first light she observed was created by a short circuit induced by the two service wires coming together. This inference would seem to entirely lose its weight in the light of the undisputed evidence that the wires in question were insulated and fastened apart not less than twelve inches. Furthermore, it is significant that the witness in question testified that but a few minutes after she first observed the light she and her husband both were satisfied that what they observed was the plaintiffs' house burning. Then, too, considering the distance of the witness from the plaintiffs' house and the early morning hour, at

which time, according to her own testimony, there was a haze, all this would lead to but one reasonable conclusion, and that is that what the witness Emma J. Williams saw was the blaze in its incipient stage.

Considering all of the evidence, and particularly the evidence of the experts, giving to it the weight which it has been held in this state it is entitled to, we are led to the conclusion that the evidence does not support the charge that the fire was caused by defendant's service wires. From this it would follow that the verdict is not supported by the evidence.

In view of our conclusions on this vital point, the question as to whether or not the plaintiffs have borne the burden of proving the charge that the defendant was negligent in constructing and maintaining the service wires, becomes unimportant.

As the case will be remanded for further proceedings, it is proper that we should consider the point urged by appellant that the court committed error in refusing to give a requested instruction to the jury that the evidence offered in support of defendant's special defense of ''plea in abatement'' entitled appellant to a verdict in its favor.

The plea in abatement is based upon the fact that in a previous action filed to recover damages suffered by reason of the burning of the house in question, plaintiffs and their son, L. A. Boomer, were plaintiffs with the defendant here as defendant. It appears that the plaintiffs, with their son, jointly owned the house in question, while the plaintiffs here were the sole owners of the furnishings therein contained. Appellant contends that under these circumstances respondents should have included in the prior action their claim for damages for the furniture which was destroyed by the fire. Even if it be admitted that this point would be well taken, if in the prior action the plaintiffs were the same as in the instant case, yet the fact that there was an additional plaintiff in the prior case would seem to defeat appellant's contention.

In order to successfully maintain the plea in abatement by reason of a prior action pending, it must appear that such action is based upon the same cause and contested by the same parties. (1 Cal. Jur. 31; *Cobe* v. *Crane,* 173 Cal. 116,

118 [159 Pac. 587]; *Schoonover* v. *Birnbaum*, 150 Cal. 734 [89 Pac. 1108].)

In view of the conclusions we have heretofore indicated the judgment is reversed.

Conrey, P. J., and Houser, J., concurred.