HARRIS MOTOR COMPANY *v.* PITTS.

4-8281                        205 S. W. 2d 21

Opinion delivered October 27, 1947.

*Barber, Henry & Thurman,* for appellant.

*Grant & Rose,* for appellee.

HOLT, J. The Workmen's Compensation Commission awarded appellee, S. W. Pitts, compensation from June 19, 1945, "at the rate of $10 per week for permanent partial disability, said compensation not to exceed 450 weeks," together with medical and hospital expenses and attorney's fee.

On appeal to the Scott Circuit Court, judgment was entered affirming the Commission's award. From the circuit court's judgment comes this appeal.

For reversal, appellants argue: "(1) That appellee, S. W. Pitts, was not injured on March 15, 1945, while working for the Harris Motor Company, and that there is no evidence in the record to sustain a finding that he was so injured. (2) That appellee did not notify appellants of any such alleged injury within the time prescribed by law and that his failure so to do bars any right he may have to compensation."

(1)

The record reflects that much evidence was taken in this case, and after a careful consideration of it all, we think the Commission's statement of the essential testimony presented by the parties is a fair abstract and summation, which we approve and adopt. It is as follows:

"At the original hearing the claimant testified that he had been in the employ of the respondent company since 1931 with the exception of the years 1940 and 1943. He stated that on March 15, 1945, while working for the respondent he was aiding other employees in unloading a shipment of motors received by the respondents. Three men were engaged in lifting the motors from a truck and one of the men lost his hold on a motor and threw a sudden and heavy weight onto the claimant. Claimant testified that immediately following this occurrence he felt a stinging sensation in his neck and he told his fellow workers he was afraid he had hurt his neck. He stated that later he mentioned the occurrence to Mr. Frank Hawkins who was acting manager at the time and also told him that he believed he had injured himself. He continued work until June 19, 1945, and on the advice of Dr. P. W. Denman, who had been treating claimant, he entered the Veterans Hospital at Fayetteville, where he remained for approximately 30 days.

"Claimant's son, Mr. Wallace Pitts, testified that he knew of no former injury suffered by his father, and that while his father was a patient in the Veterans Hospital he visited him there. Upon his return he stated that he went to Waldron, Arkansas, to the Harris Motor Company where he told Mr. Harris himself, Mr. Smith, the bookkeeper, and Mr. Hawkins about his father's condition and the diagnosis made by the physicians at the Veterans Hospital.

"Claimant's wife, Mrs. Pitts, also testified that claimant had not received any accident which caused disability during the period of their marriage since 1918.

"Luther Douglass, a mechanic for respondent company, testified that he was helping unload the motors on March 15, 1945. He stated: 'My hands were greasy and my hold slipped and I dropped my end of the motor and that is what jerked Mr. Pitts at the time he claims to have been injured. Mr. Pitts put his hand up to his neck and said "boys that hurt my neck some way".'

"Mr. Frank Hawkins, acting manager of the respondent company, Ben Milligan, another mechanic of the company, and George Smith, bookkeeper of the company, all testified that they knew nothing of the alleged injury until December of 1945 or early in January of 1946. Mr. Harris, owner of the company, stated that he knew Mr. Pitts was in the hospital, but he made no effort to find out claimant's condition because he had no knowledge that claimant contended that his disability resulted from an accident suffered during his employment.

"The medical evidence submitted to the hearing commissoner consisted of the following medical reports: Dr. F. W. Carruthers reported on February 25, 1946, that after examining this claimant he was unable to associate the patient's complaint with the injury. He further stated: 'It is my opinion that his condition is due to an old congenital deformity and it has nothing whatever to do with the injury he is alleged to have received.'

"On the same day claimant was examined by Dr. D. T. Cheairs, medical adviser, of the Commission. Dr. Cheairs also felt that claimant's disability which he found to be a 50% reduction in the movement of the neck and head did not result from the accident of March 15, 1945. The same opinion also was held by Dr. Robert Watson who reported on March 4, 1946.

"Dr. I. Fulton Jones of Fort Smith stated that claimant's condition was due to an old fracture, dislocation of the 5th cervical vertebra and he believed that claimant was totally and permanently disabled from performing any manual labor.

"Dr. W. F. Rose of Fort Smith found the dislocation of the 5th cervical vertebra as did all the other examining physicians and stated that in his opinion the claimant was permanently disabled from performing manual labor. On this evidence the commissioner found that the claimant suffered an accidental injury March 15, 1945, in the course of his employment resulting in a 50% permanent partial disability to the body as a whole by reducing his wage earning capacity by 50%. The commissioner felt that claimant had discharged the burden of proof placed upon him to show the occurrence of an injury and a resulting disability and he thereupon awarded compensation benefits at the rate of $10 a week. It is from this award that the respondents appeal.

"At the hearing on review the Commission requested claimant to produce a report of the examination and diagnosis of the physicians at the Veterans facility at Fayetteville who had treated this claimant shortly after his injury. On January 4, 1946, a report signed by Grady O. Haynes, clinical director of the institution, was introduced in this case. It listed the findings of the physicians at the hospital including a dislocation of the cervical spine. As this report was insufficient to serve the purpose of the Commission, a supplemental report was requested and received. The report is in part quoted here: 'The X-ray findings are quoted as follows: AP and lateral roentgenograms of the cervical spine revealed a dislocation of the 5th cervical vertebra on the 6th with encroachment on the mumane of the spinal canal. There is some complications of the lemina, the cervical spine at this point is angulated toward the right.'

"The history as given on June 28, 1945, was as follows: 'About one year ago car in which patient was riding stopped suddenly. For the past three months patient has had pain and stiffness in the neck and pain in the right shoulder.'

"With the admission of this report coupled with the reports of physicians who examined this claimant on behalf of respondents to the effect that claimant's disability was due to an old congenital deformity it ap-

peared that perhaps this claimant's present complaints were not a result of injuries sustained by him in his employment with the Harris Motor Company.

"Claimant requested and was granted permission to produce additional testimony contending that the history contained in the Veterans Administration's report was in error and that it was not given to them in that way by the claimant.

"On November 15, 1946, the testimony of Mr. Pitts regarding his statement to the Veterans Hospital was placed in the record over the objection of respondents. At that time Mr. Pitts stated that he gave the same history to the Veterans Administration regarding the occurrence of the injury as he did to all the other examining physicians and that it was that he had sustained an accident as described above while in the course of his employment with the Harris Motor Company. His son, Wallace Pitts, again testified that he knew of no automobile accident or other injury to his father. The same testimony was again offered by Mrs. Pitts. The testimony of Dr. Rose and Dr. Jones was introduced into the record. Both of these physicians testified that in their opinion claimant could not have been working as he did if he had sustained the disability to the cervical spine of which he now complains a year prior to June of 1945. Both of these doctors felt that since this claimant worked for the Harris Motor Company, engaged in handling parts and machinery, he would have been unable to perform such duties if he had had a dislocation of the cervical spine as early as indicated by the history contained in the report of the Veterans Hospital."

From the above testimony, some of which is somewhat conflicting, we are unable to say that there is no substantial evidence to support the findings of the Commission. We said in the recent case of *Meyer* v. *Seismograph Service Corporation*, 209 Ark. 168, 189 S. W. 2d 794: "The rule is firmly established that the findings of the Commission, which is the trier of the facts, will not be disturbed on appeal to the circuit court if supported by substantial testimony. Act 319 of 1939, § 25b. (Citing

many cases). . . . In a long line of decisions since the passage of the act here in question, the rule has been clearly established that the findings of the Commission shall have the same binding force and effect as the verdict of a jury, or of a circuit court sitting as a jury, and when supported by substantial evidence, such findings will not be disturbed by the circuit court on appeal to that court or on appeal to this court."

### (2)

Appellants' second contention that the appellee failed to give the required notice, we think untenable for the reason that appellee testified he received the injury to his neck on March 15, 1945, while in, and during the course of, his employment with the Harris Motor Company, and filed his claim for compensation with the Commission January 23, 1946. Obviously, the claim was filed well within the year required under § 18(a) of the "Workmen's Compensation Law." Appellants argue, however, that the notice of his alleged injury required to be given to the employer by the injured employee, under §.17, was not given and that the claim for compensation was barred for this reason.

Section 17(a) provides: "Notice of injury or death in respect of which compensation is payable under this Act shall be given within sixty (60) days after the date of such accident or death (1) to the Commission (2) to the employer," and Sub-section (d) provides: "Failure to give such notice shall not bar any claim under this Act (1) if the employer had knowledge of the injury or death, etc."

Appellee, as above noted, testified that he did notify Mr. Hawkins, acting manager of his injury.

Under our recent holding in *Williams Manufacturing Company* v. *Walker*, 206 Ark. 392, 175 S. W. 2d 380, this was sufficient notice. We there held: (Headnote 5) "Where an employee reports his injury as he knows it without designating its nature because not aware thereof, compensation cannot be refused for lack of notice."

On the whole case, finding no error, the judgment is affirmed.