ARKANSAS POWER & LIGHT COMPANY *v*. BOLLEN.

4-5720                                              134 S. W. 2d 585

Opinion delivered December 18, 1939.

*W. H. McClellan, T. Nathan Nall, House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*Curtis R. Duvall, Joe W. McCoy* and *H. B. Means,* for appellee.

HOLT, J. Appellant brings this appeal from a judgment of $2,000 awarded appellee in the Grant circuit

court for damages occasioned by the burning of appellee's residence alleged to have been caused by defective electric wiring.

The negligence alleged in the complaint is:

"That in installing the wires to plaintiff's residence over which electricity was to be transmitted, the defendant, its agents, servants, and employees, attached wires to plaintiff's house with brackets and neglectfully and carelessly strung said wires underneath overhanging limbs. That the defendant, its agents, servants, or employees carelessly and negligently, and without due regard to plaintiff's rights, failed to attach said brackets to said house in a safe and secure manner.

"That in a short time after brackets were attached to the building they became loosened from the house by reason of one of the overhanging limbs falling on same, permitting or causing the electric wires to come in manual or forceful contact with each other on the 15th day of April, 1938, causing plaintiff's house to be set on fire and totally destroyed."

The Home Insurance Company of New York carried insurance on appellee's residence in the sum of $1,000, and intervened in the cause, setting up that it had, in accordance with the terms of the contract, paid to plaintiff $1,000, and asked that it be subrogated to any rights of the plaintiff to the first $1,000, or any part thereof, recovered by the plaintiff in the cause, and further adopting the pleadings of the plaintiff.

Appellant answered denying every material allegation in appellee's complaint and pleaded contributory negligence and assumption of risk on the part of appellee.

On a jury trial, there was a verdict for appellee for $2,000 and awarding intervener $1,000 out of this sum.

From the judgment of the court on the verdict comes this appeal.

The evidence stated in its most favorable light to appellee is to the following effect: That appellee's residence burned on April 15, 1938. Sometime in 1935, appellant ran a two-wire service from the highway to a

pole approximately 100 feet from appellee's house. Running from this pole was a concentric cable which ran through a sycamore tree to the northwest corner of the plaintiff's house where it was attached to a bracket screwed on the corner board, from where it came down through the conduit into the meter box. A concentric cable is composed of two wires. The center wire, commonly called the ''hot wire,'' that is, the wire which carried the electricity, is covered with rubber insulation. Wrapped around this insulation is the ''cold wire'' which is in turn insulated with some sort of weatherproofing insulation. The concentric cable was brought from the bracket on the corner board through a metal pipe called the conduit pipe at the head of which was placed a ''service head'' made of bakelite. The wire ran through the conduit pipe into the meter box where connection was made and from which a ground wire was sent into the ground.

On March 30th a windstorm broke a limb from the sycamore tree referred to, which limb fell on the service line leading to appellee's house and broke the corner board off the house, caused the wire to fall down and rest directly on the conduit pipe leading to the meter. Shortly after, appellee observed that when the wind blew his lights would flicker and his radio would not work.

About April 1st, and again between that date and the fire on April 15th, appellee notified appellant that the limb had fallen on the wire, and of its unsafe condition and requested appellant to make immediate repairs. No repairs were made in response to these requests.

On the day the house burned there was no one at home. There was no fire in the fireplace of the chimney which was within about four feet of the point where the electric wire entered the residence.

A Mrs. Sheehigh, on behalf of appellee, testified: ''Q. Did you see Mr. Bollen's house the day it burned? A. Yes, sir. . . . Q. When you discovered the smoke, what did you do? A. I could see the blaze. Q. How big was it when you saw it? A. Something like a number

three wash tub. . . . Q. How far was it from the fireplace? A. Something like three or four feet."

A Mr. McMahan testified: "Q. Do you know how the electric wire came into Grady's house? A. I know where they went into the house. Q. Whereabouts did they go into the house? A. In the northwest corner about four or five feet from the chimney. . . . Q. These wires connected on the northwest corner? A. Yes, sir. . . . Q. You saw the fire? A. Yes, sir. Q. What part of the house was burning when you saw it? A. Right in there where the wire went in. Q. How big was the blaze? A. Something like eighteen or twenty inches high. . . . Q. About where the upstairs would be? . . . A. Right direct from the place where the wires went in. . . . Q. You saw that it was where the wires went into the house? A. Yes, sir, right direct. Q. The roof was not on fire at that time? A. No, sir."

A Mr. Cox, witness for appellant, testified as an expert as follows: "Q. Ernest, did you tell the jury that this wire got together and melted in two? A. I did. Q. There was enough heat to burn it in two? A. There was a short circuit there, yes. Q. Enough to burn that wire in two? A. Yes, sir. . . . Q. Mr. Cox, you tell the jury that electricity going over that wire burned it in two? A. I did. Q. What degree of heat would it take to melt copper? A. The best I remember it takes about 2,200 degrees. Q. 2,200 degrees Fahrenheit? A. Yes, sir. Q. What degree of heat would ignite wood? A. I would say it would not take over a couple of hundred degrees. Q. You tell the jury that two hundred degrees will burn wood? A. Yes, sir."

Appellant introduced expert electricians who testified that a concentric cable, such as was used in the instant case, could not have caused the fire, and that a short circuit in the concentric cable would immediately have kicked off the transformer switch by blowing the transformer fuse, and further that it would be impossible for friction to cut through a concentric cable to such an extent as to leave sufficient space between the hot and cold wires to allow the formation of an arc, and further

that when two wires, such as in the instant case, came together they immediately weld and there is no spark.

Appellant first contends that the trial court erred in refusing to direct a verdict for it for the reason that the testimony was not sufficient to take the case to the jury.

We, however, are of the view, after a careful consideration of all the evidence, reflected by the record, that there is evidence of a substantial nature that warranted submission of the case to the jury.

While it is true that appellant produced expert witnesses who testified that the origin of the fire could not have resulted from the electric wire which it had constructed into appellee's residence, lay-witnesses testified positively that they saw the fire coming from the house at the exact point and corner where the wire entered the building. The two wires had burned in two; they had rubbed against the top of the conduit pipe on account of the fallen limb. The wires were broken and welded together which required a heat of 2200 degrees Fahrenheit. 200 degrees would ignite wood.

Appellant urges that because the testimony of its experts was not contradicted, their testimony should be given conclusive effect over that of the non-expert witnesses of appellee and in support of this contention rely strongly on the case of *Boomer* v. *Southern California Edison Co.*, 91 Cal. App. 375, 267 Pac. 178, a case presenting facts very similar to those in the instant case. That case, however, does not control here for the reason that in California the courts adhere to the following rule on the effect to be given expert testimony: "That whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue."

This it not the rule followed in this state. The rule here is very clearly stated in *Western Union Telegraph Company* v. *Turner*, 190 Ark. 97, 77 S. W. 2d 633,

where this court said: "Moreover, were it conceded that all the expert witnesses introduced in the case agreed upon conclusions as argued by appellant, the jury would not necessarily have to so find the facts to be, because such testimony may be controverted by any other competent evidence. *St. Paul Fire & Marine Ins. Co.* v. *Green,* 181 Ark. 1096, 29 S. W. 2d 304. Not only this, but, were it conceded that all the expert testimony offered by both parties was in full accord and agreement and not contradicted by any other expert evidence, yet the jury would not be bound by such testimony. 11 R. C. L. 586 states the rule as follows: 'Even if several competent experts concur in their opinion, and no opposing expert evidence is offered, the jury are still bound to decide the issue upon their own fair judgment'. See *Zimmer* v. *Kilborn,* 165 Cal. 523, 132 Pac. 1026, Ann. Cas. 1914D, 368 and note; *Fowle* v. *Parsons,* 160 Ia. 454, 141 N. W. 1049, 45 L. R. A., N. S. 181 and note".

We have many times held that it is the duty of one supplying electricity to the public to exercise ordinary care in the construction of its service lines to see that they are installed in a reasonably safe manner and to make inspections at all reasonable times, and to see that its equipment is kept in a reasonably safe condition, and this duty is a continuing one.

In *Arkansas Gen. Utilities Company* v. *Shipman.* 188 Ark. 580, 67 S. W. 2d 178, this court said: " 'The duty of an electric company in reference to keeping its appliances in safe condition is a continuing one. Not only must it exercise a high degree of care in the original selection and installation of its electric apparatus, but thereafter it must use commensurate care to keep the same in a proper state of repair. The obligation of repairing defects does not mean merely that the company is required to remedy such defective conditions as are brought to its actual knowledge. The company is required to use active diligence to discover defects in its system. In other words, an electric company is bound to exercise due care in the inspection of its poles, wires, transformers and other appliances.' Curtis on Elec-

tricity, 699; *Arkansas Power & Light Company* v. *Cates*, 180 Ark. 1003, 24 S. W. 2d 846." See, also, *Arkansas Power & Light Company* v. *Cullen*, 167 Ark. 379, 268 S. W. 12.

Appellant next contends that the evidence shows conclusively that appellee was guilty of contributory negligence as a matter of law, and that the court erred in giving an instruction on behalf of appellee which ignored appellant's defense of contributory negligence.

The record reflects that the court, at appellant's request, submitted to the jury as an issue the contributory negligence of appellee, and also at the request of appellee submitted an instruction which ignored appellant's plea of contributory negligence on the part of appellee, and instructed the jury to make its findings on a certain state of facts without taking into consideration appellant's defense of the contributory negligence of appellee.

It is our view, however, that the evidence in the instant case fails to show that appellee was guilty of any contributory negligence. Considering the known and latent dangers in the live electric wire in question, we think the appellee, when as the evidence shows, on two different occasions, notified appellant of the dangerous situation of its wires, he had then done all that ordinary care required of him, and that no negligence, can, therefore, be chargeable to him.

This court in *Southwestern Gas & Electric Co.* v. *Murdock*, 183 Ark. 565, 37 S. W. 2d 100, said: "Appellant contends first, that the court erred in giving instruction No. 5, because it did not take into consideration the defense of contributory negligence. After a careful examination of the record, we have reached the conclusion that there is no evidence tending to show that appellee was guilty of contributory negligence, and there was, therefore, no error in giving the above instruction."

There was no error, therefore, in giving appellee's instruction No. 1.

On this entire record, finding no errors, we conclude that the judgment should be affirmed, and it is so ordered.