HUGHES *v.* TAPLEY, ADMINISTRATRIX.

4-7224                                      177 S. W. 2d 429

Opinion delivered January 31, 1944.

*Harper & Harper,* for appellant.

*Warner. & Warner,* for appellee.

Holt, J. Appellant, Emory Hughes, presented his claim against appellee before the Workmen's Compensation Commission for an award of compensation, under the Workmen's Compensation Law (Act 319 of 1939). As a basis for his claim, appellant alleged that he received serious and permanent injuries while in the employ of appellee, and that his injuries arose out of and in the course of his employment, within the meaning of the Workmen's Compensation Law. Upon a hearing before the Commission, January 23, 1943, appellant's claim was denied. On appeal to the Sebastian circuit court, Greenwood district, that court, January 28, 1943, affirmed the finding and order of the Commission and entered judgment accordingly. This appeal followed.

For reversal, appellant says: "(1) The Commission and the circuit court erroneously construed the compensation act. in holding that under all the circumstances involved, the claimant's injuries did not arise out of and in the course of his employment. (2) There was not sufficient competent evidence in the record to warrant the making of the Commission's order, and the circuit court erred in affirming the same." The two points are so closely related that we consider them together. The question presented, therefore, is whether there was substantial evidence to support the findings and conclusion of the Commission denying compensation to appellant. Appellant, with commendable candor, concedes that "This appeal is prosecuted with a full realization of the difficulty confronting appellant. We are not unmindful of the established rule that this court and the circuit

courts cannot re-examine facts found by the Compensation Commission upon competent and sufficient evidence. We are not unmindful of the fact that there is an apparent conflict in the testimony as to how Hughes was injured.''

The rule is well established, under the Workmen's Compensation Act that ''Findings of fact made by the Workmen's Compensation Commission are, on appeal, given the same verity as attach to the verdict of a jury, and this applies on appeal to the circuit court as well as to the Supreme Court from the circuit court.'' (*J. L. Williams & Sons, Inc.,* v. *Smith,* 205 Ark. 604, Headnote 2, 170 S. W. 2d 82). See, also, *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600.

This rule was applied in the recent case of *McGregor & Pickett* v. *Arrington, post,* p. 921, 175 S. W. 2d 210. It was there said: ''It may first be said that the conflicts in the testimony are slight, and unimportant, but if the facts were otherwise, we would not disturb the findings of the commissioners, if there is substantial testimony to support their findings.'' See, also, *Birchett* v. *Tuf-Nut Garment Manufacturing Company,* 205 Ark. 483, 169 S. W. 2d 574; *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579; *Solid Steel Scissors Company* v. *Kennedy,* 205 Ark. 958, 171 S. W. 2d 929; and *Baker* v. *Silaz,* 205 Ark. 1069, 172 S. W. 2d 419.

The rule is also well settled that in testing the sufficiency of the evidence before the Commission, the circuit court, on appeal from the Commission, and this court, on appeal from the circuit court, must weigh the testimony in its strongest light, in favor of the Commission's findings.

With these settled rules in mind, we now look to the testimony. Appellant, Hughes, while working for the O. E. Tapley estate, at its coal strip-pit near Greenwood, Arkansas, was severely burned on April 23, 1942, at about 7 o'clock p.m. It was Hughes' duty to help load the powder charges used in blasting away the coal and to fire charges of powder after they were placed. These charges were usually lighted and set off by the use of

a carbide light. At the time of his injury, there were other employees present, among them being Gordon Lamb, Joe McConnell, and a deaf and dumb Negro, Macon Turley. After a careful review of all the testimony, we think its effect is fairly stated by the Commission, as follows: ''The testimony of Mr. McConnell, supervisor, was that at the time of the accident, work had been stopped and from the testimony it appears that the cleaning up work following such stoppage of work was in progress. The testimony of Mr. Joe McConnell and Gordon Lamb was that at times they had seen the claimant, as well as others, attempt to scare a deaf and dumb Negro, Macon Turley, who was also employed on the job, by throwing lighted fuses near him causing him to jump. Claimant herein denies that he has ever attempted to scare the Negro, but that at times he had tossed lighter fuses at him in order to inform him that the shots had been lighted and to warn him thereof. Just a few minutes before the accidental injury occurred, the testimony bears out that the claimant, Hughes, Gordon Lamb and Robert Canady, all employees, were together near the spot where the accidental injury occurred; that Robert Canady had in his hand a dummy explosive made from the paper off a stick of power. The reason for so having this dummy explosive is rather vague to the Commission, and the intended use thereof poorly explained. However, when Robert Canady walked away shortly before the explosion occurred he took with him this dummy explosive which was found the next day, according to his testimony, near where his truck was parked some 30 or 40 feet west of the scene of the accident. Gordon Lamb testified that he had gathered up some loose charges of powder that had been taken from the box of explosives, but had not been used, and had carried them to the box when the claimant, Hughes, informed him that he was going to scare the deaf and dumb Negro; that he warned Hughes not to do so; that Hughes picked up a piece of powder and fuse and walked 20 or 30 feet east to the air compressor and got a carbide light, which was hanging on the compressor, and returned to where Lamb was; that he again warned the claimant not to attempt to scare

the deaf and dumb Negro as he might hurt him, and then walked in the direction of the deaf and dumb Negro in order to warn him that the claimant would attempt to scare him; that he had gotten part way to the Negro when the explosion occurred. The carbide light in question was later found in a charred condition.

"The claimant, Emory Hughes, being recalled in rebuttal to the testimony of Gordon Lamb, denied that he had ever attempted to scare the Negro; that no such thing occurred; that he did not see Lamb after Lamb returned with the loose powder and placed it in the powder box; that he did not know where the deaf and dumb Negro was at the time of the accidental injury; that the powder was sitting directly behind the air compressor and not 20 or 30 feet away; that he does not know what caused the explosion from which he received his accidental injuries. The Commission has also before them the testimony, through an interpreter, of the deaf and dumb Negro, Macon Turley, who testified that he had been watching the claimant and that he saw him go to the air compressor and get the carbide light and return to the powder box and saw him set the light upon the box of powder and saw the light topple and fall and the explosion occur."

We think the above evidence was most substantial and ample to warrant the Commission's finding, and that the judgment of the circuit court affirming the Commission's action was correct.

This case simply and clearly presents a situation where appellant, Hughes, voluntarily stepped aside from his employment to engage in a sportive act, horseplay or prank, in order to frighten the unfortunate deaf and dumb Negro, Turley, and in his preparation to carry his plans into effect, he was injured, solely by his own acts. The injuries thus received did not arise out of appellant's employment.

The general rule, as stated in 71 C. J., § 431, p. 681, is as follows: "An injury to an employee does not ordinarily arise out of the employment where it results from sportive acts of co-employees, or horseplay or skylarking, in which the employee takes an active part," and in 13

A. L. R., 540, in an annotation, the annotator states the general rule to be: "It is generally held that no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts."

Appellant says that the testimony of the deaf mute (Negro) was not competent. We think, however, that the Negro was a competent witness, his testimony relevant and material, and there was no error in the manner in which it was presented before the Commission. This court, in *Dobbins* v. *Little Rock Railway & Electric Company*, 79 Ark. 85, 95 S. W. 794, 9 Ann. Cas. 84, held the testimony of a deaf mute, through an interpreter using the sign language, competent. It was also there held that the method of giving the testimony, whether by signs or by writing, was within the discretion of the court.

While it is true that appellant, in the instant case, has received most serious and painful injuries, he was, on the evidence presented, the unfortunate victim of his own acts, and his injuries resulting therefrom did not arise out of his employment and therefore he is not entitled to compensation. Accordingly, the judgment is affirmed.