CAMPBELL *v*. ATHLETIC MINING & SMELTING COMPANY.

4-8808                                            223 S. W. 2d 499

Opinion delivered October 10, 1949.

774

*Hardin, Barton & Shaw,* for appellant.

*Warner & Warner,* for appellee.

FRANK G. SMITH, J.  This case originated before the Arkansas Workmen's Compensation Commission by the filing of the claim by Emily Campbell, as widow and sole dependent of John Campbell, deceased.  At the time of his death Campbell was employed as production foreman or maintenance manager of the Athletic Mining & Smelting Company.  His duties, among others, required that he assemble materials used at the Smelter.  The Brickey's Auto Salvage Yard had in stock some insulators, brackets and other like material needed by the Smelter Company and on April 12, 1945, after the close of the regular working day, Campbell, at the direction of his employer, accompanied by Paul Sidler, another employee, went to the Brickey's Yard for the purpose of getting material, and after loading it, he drove Sidler to the latters home and returned to his own.  He arrived there about 5:00 p. m. and told his wife and the nurse who was attending her, Mrs. Campbell being ill, that he had been bitten or stung by a spider.  He told his wife that at the time he was bitten it felt like he had stuck a splinter in his leg, and he exhibited a red area on his thigh as large as the palm of her hand, in the center of which there were two small puncture marks about one-fourth of an inch apart.  Mr. Campbell informed the nurse attending his wife, who immediately attempted to locate and call Dr. Chamberlain, the family physician, but she was unable to locate the doctor that night and he did not see Mr. Campbell until the following morning.  Campbell had a high fever during the night and the next morning a rash covered his body.  The doctor treated Campbell by administering sulfanilamide drugs and making applications of hot compresses to the swollen area.

On April 16th Campbell's temperature dropped and the rash began to fade and the sulfa drug was discontinued. Campbell's thigh continued to swell and he appeared to be toxic, according to the testimony of Dr. Chamberlain, and on the 21st Campbell was sent to the hospital where his blood count revealed the presence of severe anemia; his red cell count being 1,690,000 compared with the normal count of 5,000,000. He was given blood transfusions of more than three pints of blood, with little improvement in his red cell count. He sustained a severe generalized convulsion. On account of the fulminating poison or toxemia present his heart began to show signs of failure and oxygen therapy was given. But despite these supportive measures Campbell died about 4:00 p. m. on April 24th. Such was the testimony of the doctor in attendance. Campbell told his brothers-in-law that he had been bitten by a spider and they testified that they saw puncture marks at the place of swelling. The death certificate prepared by the doctor gave the cause of death as acute hemolytic anemia, secondary to toxins of unknown origin.

The hearing on the claim was first had before a single member of the Workmen's Compensation Commission, who disallowed it. Thereafter the matter was brought before the full Commission for review, where it was again disallowed. An appeal was prosecuted to the Circuit Court where a judgment was entered affirming the order of the full Commission denying compensation, from which judgment is this appeal.

For the reversal of the Circuit Court judgment appellant contends that the testimony of Dr. Chamberlain and other witnesses indisputably reflects that the deceased was bitten by an insect of some type and from this bite some sort of toxin was introduced into Campbell's system, along with a streptococcal infection; or that the toxin injected by the insect rendered the deceased more susceptible to a harbored streptococcal infection; and that his death was the result of the susceptibility to the toxin injected by the insect bite or a sensitivity to the sulfa drug which was administered on account of the

insect bite, or a combination of these toxins, and that one or the other of such toxins produced a condition which led to the acute hemolytic anemia.

It appears to be undisputed that Campbell was infected with a streptococcus germ and Dr. Baerg, Prof. of entomology at the State University, who was not a medical doctor testified that a person who is infected with streptococcus germs would be affected by toxins from the bite of an insect otherwise calculated to be harmless.

Dr. Chamberlain testified that ''In my mind as to the part the streptococcus played in the man's death, which would have been allayed by a post mortem examination (which was not held) is whether or not the toxin that entered his body upon the bite of the insect was causing the susceptibility of the sulfa drug administered or a combination of the two, to such an extent that his resistance to streptococcus infection either harbored in his system or introduced at the time of the bite became apparent in twenty-four hours. In my opinion one or the other combinations of toxins caused the man's death.''

If it be said that the testimony recited would support the finding that the spider bite contributed to, if it did not cause Campbell's death, we are confronted with the express finding of the Commission that Campbell's death was not caused by the spider bite and that there was therefore no industrial injury compensable under the law.

The question is therefore not whether the testimony would have supported a finding contrary to the one made, but rather whether it supports the finding which was made.

The recent case of *Green* v. *Lion Oil Co., ante* p. 305, 220 S. W. 2d 409, it was said: ''It is also well settled that the circuit court on appeal from the commission and this court on appeal from the circuit court must give to the findings of fact by the commission the same force and effect as the verdict of a jury or of the circuit court sitting as a jury. *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600; *Sturgis Brothers* v. *Mays,* 208 Ark. 1017,

188 S. W. 2d 629. In determining whether there is sufficient evidence to support the award, both the circuit court and this court on appeal must weigh the testimony in the strongest light in favor of the commission's findings. *Hughes* v. *Tapley, Admrx.,* 206 Ark. 739, 177 S. W. 2d 429."

There was testimony to the following effect. No one saw the spider and there was testimony that the Brickey's place of business was cleanly kept and no one had ever seen any spiders there. Campbell was wearing at the time of the supposed bite, a pair of khaki trousers, and there was no testimony that a spider had crawled up inside of the leg thereof. Campbell made no comment or complaint to Sidler that he had been stung at the time of the alleged occurrence, and he made no effort to catch or kill the insect which had stung him. He drove Sidler home without mentioning the fact that he had been stung or bitten. The redness or rash was visible when he arrived at home and he ran a high temperature that night.

In addition to Dr. Chamberlain, three other physicians of equal eminence in their profession, testified and were of the unanimous opinion that even though Campbell had been stung by a spider, the symptoms which developed would not have developed from that fact under from twenty-four to seventy-two hours. In their opinion the streptococcal infection which caused Campbell's death existed for at least twenty-four hours or probably longer, prior to 4:30 p. m. April 12th.

The undisputed testimony shows that a pricking or stinging sensation is the common signal of the onset of streptococcus infection. Dr. Chamberlain as well as the other doctors, testified that this infection might exist for some time and not be noticed until the patient feels a stinging sensation in the infected · area, and that the person stung will observe for the first time the inflamed, swollen condition and that "That represents the common mode of onset of streptococci skin infection." The expert testimony on appellees' behalf was to the effect that if Campbell sustained an insect bite between 4:15 and 4:45 on

April 12th, and streptococcal germs were thereby inserted into his body, fever would not develop by midnight, or the rash appear by the following morning from that cause. The doctors had never seen or heard of a case where streptococcal germs were introduced by the bite of an insect, but the infection sometimes results from scratching mosquito or chigger bites, but it is secondary to the scratching. The testimony is to the further effect that the bite of a spider, wasp, bee, or other small insects does not produce streptococcal infection, unless that germ is on the skin of the person bitten or on the proboscis of the stinging animal. The venom of the insect does not itself produce streptococcal infection, although it may immediately cause pain, redness, rash and swelling and the testimony of the expert witnesses is to the further effect that streptococci germs introduced by insect bites have to lie in the tissues and multiply to a certain number and elaborate their toxins and poisons before the tissues can react with local symptoms and the body with general symptoms. One of the doctors illustrated by saying that if he had a streptococci germ in his throat and coughed so that it gets into another's throat, that person will continue to be well for from three to ten days, or a minimum of three days when there would suddenly develop a sore throat, and temperature and in from twenty-four to forty-eight hours to develop a skin rash, that this is the clinical incubation period for the development of the rash.

The case presents a question of fact about which experts may differ and might be mistaken, but which is nevertheless a question of fact and the testimony is sufficient to support the finding that the streptococcal infection from which Campbell suffered and died was not caused by the bite of a spider or other insect, for the reason that a sufficient period of time had not elapsed after the supposed bite for the incubation of germs to cause fever and a rash.

If it be said that the testimony is almost undisputed that Campbell died from a streptococcal infection, it is by no means undisputed, or at all certain, that the in-

fection was caused by an insect's sting. It is agreed that the administration of a sulfa drug was the proper treatment for the infection, and it is also clearly shown that the administration of this drug tends to the production of an anemic condition, its effect being more pronounced in some cases than in others depending on the sensitivity or susceptibility of the patient to the drug, and the testimony warrants the finding that it was the administration of the drug which so greatly reduced Campbell's blood count.

The Commission's finding being supported by evidence sufficient to support that finding must be affirmed and it is so ordered.

MILLWEE, J., dissents.