SPRINGDALE MONUMENT COMPANY *v.* ALLEN.

4-9032                                              226 S. W. 2d 42

Opinion delivered January 16, 1950.

Rehearing denied February 13, 1950.

*Harper, Harper & Young* and *J. W. Durden,* for appellant.

*Sullins & Perkins, Owens, Ehrman & McHaney* and *John M. Lofton, Jr.,* for appellee.

HOLT, J. This claim, under the Workmen's Compensation Act, 319 of 1939, as amended, (now Ark. Stats. 1947, §§ 81-1301-81-1349) was begun by W. H. Allen in March 1947, for disability benefits. He alleged that he had become disabled as a result of accidental injuries which he sustained March 29, 1946, while employed by appellants, and growing out of said employment.

Shortly thereafter, Allen died and the claim was then treated as one for death benefits on behalf of appellees. Allen's widow and minor child.

A hearing before a single member of the Commission resulted in a favorable award to them.

On an appeal to the full Commission, at which the evidence before the single commissioner and also additional evidence was presented and considered, an

award to appellees was denied, in a unanimous opinion, by the Commission. Thereupon, appellees appealed to the Washington Circuit Court, which reversed the action of the full Commission and awarded death beenfits to appellees.

This appeal followed.

The primary and decisive question presented is one of fact,—that is, was there substantial evidence to support the full Commission's rejection of appellees' claim for death benefits? We hold that there was.

Appellees based their claim on the allegation that W. H. Allen (37 years of age), while employed by appellants, and as a result of said employment, sustained an injury in March, 1946, which resulted from being struck in the testicle by a chain and that the trauma, or blow, caused cancer and aggravated or caused a pre-existing cancer in Allen's testicle to become active, which brought about his death June 20, 1947.

Appellees earnestly contend that the trauma, or blow, which Allen received "either caused a teratoma (tumor) or expedited the development of a pre-existing teratoma which ultimately caused his death."

W. H. Allen received what appeared to be a minor injury to his left testicle March 29, 1946. He continued work and did not consult his family physician, Dr. Hathcock of Fayetteville, until April 2, 1946. On June 10th thereafter, Dr. Hathcock removed the diseased organ and about four inches of cord, which were sent to a pathologist, and after analysis, he reported teratoma, highly malignant, and cancerous. About June 15, 1947, it was discovered that Allen had cancer of the lungs and his death followed June 20, 1947.

Much medical testimony was presented, which was highly conflicting.

Dr. Hathcock, a general practitioner of unquestioned standing and ability, testified, in effect, that his first examination of Allen revealed no signs of any injury or trauma; that he and the medical profession did not know

the cause of cancer; that some hold that trauma is the cause or might be the exciting cause of cancer, and that it is true in many cases that teratoma may transpose to the lungs rapidly. In short, his opinion was that he did not know whether trauma was a factor which could cause teratoma to develop or not, that it might have some relation or be purely coincidental.

Dr. H. Fay H. Jones of Little Rock, a recognized specialist in the field of urology, with some 30 years experience, testified, in effect, that in his opinion the blow, or trauma, which Allen received had nothing to do with Allen's cancerous condition, in the instant case. (Quoting from his testimony): "Q. I wish you would please give the Commission your opinion as to whether or not the blow which he is alleged to have received from that chain caused a teratoma which was found? A. I don't think it did. I think it was already there before he had his injury. Q. Then that being true the striking with the chain would have had nothing to do with the resulting carcinoma? A. No. . . . Q. Would you say the striking of the chain, if he was struck in the manner testified to, did not produce a teratoma? A. In my opinion it did not. Q. And the resulting condition would have developed anyway? A. That's right. Q. Would it have aggravated it so that it would have caused it? A. It wouldn't aggravate it. It would, maybe bring it out a little quicker. Sometimes we see them with no injury at all and suddenly begin growing. Q. By that you mean it would have come to his attention quicker? A. That's right, by striking him."

Practically all of the medical testimony was to the effect that the teratoma metastasized to the carcinoma or cancer of the lungs.

Dr. J. D. Southard of Fort Smith, another specialist in urology, after quoting from many outstanding medical authorities and treating the subject at length, summed up his opinion as follows: " . . . the teratoma and general metastasis could not have been as a result of the claimed injury, particularly in view of the minor nature of the injury."

Dr. Carl Wilson, also a specialist in urology, of the Holt-Krock Clinic of Ft. Smith, summarized his opinion based on the record in the present case, as follows: ''The question as to whether a teratoma can be aggravated by injury has never been settled. . . . It is impossible for trauma to produce a teratoma. Whether trauma can aggravate a previously existing teratoma is a question that has not been definitely decided as yet. Competent authorities may be found on both sides of the question. The consensus of opinion now is that it probably has little to do with the condition. It is my own personal feeling that it plays little, if any, part.''

From the above testimony, we are unable to say that there was no substantial evidence to support the findings and action of the full Commission. We hold that the Washington Circuit Court erred in holding otherwise.

We said in the case of *Meyer* v. *Seismograph Service Corporation,* 209 Ark. 168, 189 S. W. 2d 794: ''The rule is firmly established that the findings of the Commission, which is the trier of the facts, will not be disturbed on appeal to the circuit court if supported by substantial testimony. Act 319 of 1939, § 25 b; (Citing many cases). . . . 'In a long line of decisions since the passage of the act here in question, the rule has been clearly established that the finding of the Commission shall have the same binding force and effect as the verdict of a jury, or of a circuit court sitting as a jury, and when supported by substantial evidence, such findings will not be disturbed by the circuit court on appeal to that court or on appeal to this court.' . . . The Commission had the right, just as a jury would have had, to believe or disbelieve the testimony of any witness.'' See also, *Harris Motor Company* v. *Pitts,* 212 Ark. 145, 205 S. W. 2d 21 and *Mechanics Lumber Company* v. *Roark, ante,* p. 242, 224 S. W. 2d 806.

When we give to the testimony its strongest probative force in favor of the action of the full Commission denying the award, as we must do, we are unable to say that such action was not based on some substantial testimony.

Accordingly, the judgment of the Washington Circuit Court is reversed and the cause remanded with directions to affirm the action or order of the full Commission.

MILLWEE and LEFLAR, JJ., dissent.