BOYD EXCELSIOR FUEL COMPANY *v.* McKOWN.

5-865                                         288 S. W. 2d 614

Opinion delivered April 2, 1956.

*Rose, Holland & Holland,* for appellant.

*Kincannon & Kincannon,* for appellee.

SAM ROBINSON, Associate Justice. The appellant operates a coal mine where the appellee worked as a miner for about 10 or 12 years. In 1951, appellee quit work and made a claim for workmen's compensation, contending that he is disabled because of silicosis. The first hearing was conducted by Mr. C. L. Farish, Chair-

man of the Workmen's Compensation Commission, who made a finding that the claimant contracted silicosis within the meaning of the statute while in the employ of the respondent, and awarded compensation. On appeal to the full Commission, compensation was denied by a majority of the three member Commission. Mr. Farish was no longer Chairman; but Mr. Arnold B. Sikes, who was then a member of the Commission, dissented, stating it is his opinion that the claimant has Grade 2 Silicosis, and is totally and permanently disabled. The claimant appealed to the Circuit Court and there, after a very careful study of the case by the court, the finding of the Commission was reversed and the claimant was awarded compensation. The employer is the appellant here.

The Commission made a finding of fact, as follows: "Claimant has been a coal miner for more than forty years. From about 1939 to 1951, claimant was, except for a period of one or two years during World War II, employed in some capacity in the coal mine of respondent employer. Claimant resigned his employment with respondent employer on June 25, 1951, and the reason given for resignation is that some misunderstandings arose when effort was made to assign claimant to a lighter job involving the transfer of another employee. Claimant had requested lighter work, or a few months' leave from the mine, because he felt worked down and needed a rest. A day or two after resigning from employment with respondent employer claimant went to a doctor. This led to a series of examinations by various doctors in an effort to diagnose and treat claimant's ailment. Claimant was then complaining of extreme shortness of breath and rapid fatigue upon exertion. As early as July 1951, a diagnosis of emphysema was made by the Arkansas Tuberculosis Sanatorium and the opinion was advanced that claimant was totally and permanently disabled at that time on account of emphysema. Claimant was examined on several other occasions by the Arkansas Tuberculosis Sanatorium, and also by several other medical authorities. Eventually the Arkansas Tuberculosis Sanatorium, through Dr. J. D. Riley,

ventured an opinion that claimant suffered 'Silicosis, Grade II, Advanced Emphysema.'

"Dr. Charles T. Chamberlain, Ft. Smith, Arkansas, examined claimant at least twice and concluded that 'The cause of his (claimant's) total and permanent disability is chronic pulmonary fibrosis and silicosis, grade one.' Dr. Chamberlain's findings are practically the same as those of Dr. Herbert C. Sweet, of St. Louis, Missouri. Other doctors, notably Dr. O. A. Sanders, of Milwaukee, Wisconsin, and Dr. Jesse E. Douglass, of Webb City, Missouri, make a diagnosis of no finding of silicosis. Dr. Douglass finds 'severe emphysema,' and Dr. Sanders finds, 'Possible emphysema.'

"Dr. Harley Darnall, of Ft. Smith, Arkansas, called as a witness by respondent, testified at length and in detail, and though he found no silicosis as a result of his examination of claimant, he did find 'Severe emphysema,' and stated on cross-examination that he could not make a diagnosis of silicosis because of the absence of nodules appearing on X-ray of the lungs, but that some recognized medical authorities did make findings of silicosis in the absence of such nodules upon X-ray examination.

"Dr. E. Z. Hornberger, Jr., of Ft. Smith, Arkansas, also called to testify by respondents, stated that Grade I Silicosis could well be present in a patient and no nodules show up on X-ray examination. Dr. Hornberger was then asked: 'Grade I would not make a person 100 per cent disabled?' The doctor replied: 'That's a hard question to answer.' Dr. Hornberger was next asked: 'Well, it wouldn't ordinarily disable?' He answered: 'In the average case it shouldn't.'

"The primary question for decision here is whether or not this claimant's disability derives from silicosis."

According to the Commission's finding of fact, Dr. Riley, who examined the claimant on three different occasions over a period of about eight months, Dr. Charles T. Chamberlain, who actually treated the claimant for a long period of time, and Dr. Herbert C. Sweet, of St. Louis, Missouri, who had ample opportunity to examine

claimant while in a hospital, all gave a positive diagnosis of silicosis. In making a finding against silicosis, the Commission appears to rely upon the testimony of Dr. O. A. Sander, of Milwaukee, Wisconsin, Dr. Jesse E. Douglass, of Webb City, Missouri, Dr. Harley Darnall and Dr. E. Z. Hornberger, of Fort Smith. If there is any substantial testimony to support the Commission's finding, it must be found in the testimony of the four doctors just mentioned. There is no other testimony in the record indicating that the claimant does not have silicosis. In fact, circumstantial evidence of silicosis is very strong.

Silicosis is a disabling condition of the lungs caused by inhaling dust of stone, sand, or flint; among other manifestations is the formation of fibrous tissue in the lungs. See Maloy's Medical Dictionary. The claimant had worked as a miner for more than 40 years. Conditions in appellant's mine were such as to give rise to silicosis; others besides claimant had become disabled from silicosis while working in the mine. Although there is evidence to the effect that the appellant used precautions to keep down dust and the mine was known as a wet mine, still, there is no substantial evidence in the record that silicosis could not be contracted in the mine, but there is substantial testimony to the contrary. A careful examination of the evidence in this case leaves no doubt but that the claimant is permanently and totally disabled due to a lung condition; according to the undisputed evidence, he has emphysema. There is no substantial evidence that emphysema of the lungs is not caused by silicosis.

Now as to whether the testimony of Drs. Sander, Douglass, Darnall and Hornberger is substantial evidence to the effect that the claimant does not have silicosis: There appears to be a report in the record signed Jesse E. Douglass, who, judging from the report, we assume is a doctor. It does not appear that he testified in the case and it does not appear that there was any opportunity for cross-examination. The record does not show the qualifications of the doctor or identify him

in any manner other than the report signed, as indicated. The report deals with appellee McKown, and states: "Three years ago developed progressive dyspneoa and weakness. For the past two years has had cough with some expectoration. Has difficulty in laying down to sleep. In 1951 had three examinations with Chest X'Ray Films at Arkansas State Sanatorium and on last examination was told he had Silicosis and Emphysema. Has had two subsequent examinations by doctors in Fort Smith, with Chest X'Ray Films and was apparently given the same diagnosis. Diagnosis: Marked Emphysem... with no Silicosis or Tuberculosis. Opinion: This man has severe Emphysem... which is totally and permantly disabeling but I do not know that it is compensible. It did not occur as the result of his occupation. I do not know the cause of this man's Emphysema." The undisputed evidence in the record is that silicosis will cause emphysema. Dr. Douglass states: "I do not know the cause of this man's Emphysema." If he does not know the cause of the emphysema, it can hardly be said that his testimony to the effect that it is not caused by silicosis is substantial evidence. It is not clear as to how he arrived at his conclusion; there does not appear to have been any opportunity for cross-examination. Ark. Stats. § 81-1323 (c) provides that evidence before the Commission may "include verified medical reports which shall be accorded such weight as may be warranted from all of the evidence in the case." Dr. Douglass' report was not verified, as required by statute, however no objection was made to it; but, nevertheless, the report is only entitled to "such weight as may be warranted from all of the evidence in the case." In view of all of the other evidence in the case, and, considering that Dr. Douglass' qualifications are not shown; that there is no evidence of the extent of the examination he made; that there was no opportunity to cross-examine; and that the report is not verified, it cannot be said that his report warrants a finding that the claimant does not have silicosis.

Now, as to Dr. O. A. Sander, of Milwaukee, Wisconsin: There is no showing as to his qualifications except

that one of the local doctors at Fort Smith testified that he knew Dr. Sander. Dr. Sander's report is not verified, as required by statute, nor was there any opportunity for cross-examination. Even if his report had been verified, it would only be entitled to such weight as may be warranted from all of the evidence in the case. When his entire report is considered in the light of the other evidence, it is not entitled to much weight. The evidence is overwhelming to the effect that the claimant is totally and permanently disabled; the only real issue is whether the emphysema is caused by silicosis or something else. But, according to Dr. Sander's report, there is not much wrong with the man. Of course, Dr. Sander had no opportunity to examine claimant, and merely gave his opinion on information furnished by others. He states: "There is no evidence of Silicosis. Possible emphysema, but a high grade emphysema is not suggested by the X-ray appearance . . ." The doctor then says that emphysema does not cause disability unless extreme, and then adds: "Such extreme emphysema is not suggested by this man's X-ray films."

Next, the Commission's finding deals with the testimony of Dr. Harley Darnall, Fort Smith. Dr. Darnall, called as a witness by respondent, merely testified that X-ray shows no evidence of silicosis, but states that the claimant has severe emphysema, and there is scarring in the chest, and he could give no definite reason for it. The sum and substance of Dr. Darnall's testimony is to the effect that from an X-ray he cannot find silicosis.

The next doctor giving testimony upon which the Commission based its finding, is Dr. E. Z. Hornberger. This witness, introduced on behalf of respondent, states that the claimant has all of the symptoms of silicosis except the nodules and that he does not have an asthmatic chest. The doctor further states that Silicosis, Grade I, is not demonstrable by X-ray. On direct examination, the doctor was asked:

"Q. Grade I would not make a person one hundred percent disabled?

A. That's a hard question to answer.

Q. Well, it wouldn't ordinarily disable?

A. In the average case it shouldn't.

Q. That is the only criterion of silicosis, from your studies and experience, that is missing — the nodules?

A. That's right. Silicosis could be the cause of what he has in his disability at the moment as far as the examination of the individual.''
It certainly cannot be said that Dr. Hornberger's testimony is substantial evidence to the effect that the claimant does not have silicosis. In fact, according to Dr. Hornberger, Grade I Silicosis will not show in an X-ray, and when asked whether Grade I would render a person 100 per cent disabled, he said: ''That's a hard question to answer.''

There is other medical testimony in the record, produced by respondent, that the Commission does not mention in its finding. Dr. Mendelsohn, who is an X-ray expert for the Holt-Krock Clinic, states there is no evidence of tuberculosis or pneumoconiosis, but there is marked emphysema. Although Dr. A. B. Martin, of the Holt-Krock Clinic, states that X-ray does not show silicotic nodules, and notwithstanding Dr. Mendelsohn's report, the Clinic made a diagnosis of silicosis.

Dr. W. F. Rose testified that Grade I Silicosis is not disabling and that there must be nodules in the lungs before a diagnosis of silicosis can be made. He does not know whether the claimant has silicosis and has not examined him. All this doctor can say is that probably, from the reports, McKown is not disabled from silicosis, and his opinion is partially based on the report of Dr. Riley, who says silicosis is present.

It is apparent from the Commission's finding that the reports of Dr. O. A. Sander, of Milwaukee, Wisconsin, and Dr. Jesse E. Douglass of Webb City, Missouri, were largely relied on as a basis for the finding that claimant does not have silicosis. But, as heretofore pointed out, the reports of these doctors were not veri-

fied, as required by statute; there was no opportunity to cross-examine; and although the statute makes the reports admissible in evidence, if verified, they are only entitled to such weight as is warranted from all of the evidence in the case.

Many times, we have held that the finding of the Commission will be sustained if supported by any substantial evidence. *Duke* v. *Pekin Wood Products Company,* 223 Ark. 182, 264 S. W. 2d 834; *Springdale Monument Company* v. *Allen,* 216 Ark. 426, 226 S. W. 2d 42; *Tri-States Construction Company* v. *Worthen,* 224 Ark. 418, 274 S. W. 2d 352; *American Casualty Company* v. *Jones,* 224 Ark. 731, 276 S. W. 2d 41. Here, it does not appear that there is any substantial evidence to support the Commission's finding. The evidence in this case is overwhelming to the effect that the claimant is permanently and totally disabled, and that his disability is due to the condition of his lungs; circumstantial evidence points to silicosis as the cause of the disability. All of the doctors who examined the claimant over a period of time stated that his disability is due to silicosis; evidence to the contrary is very weak and not substantial. Whether there is substantial evidence is a matter of law. *Arkansas State Highway Commission* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738.

The law of this State is that workmen's compensation cases should be broadly and liberally construed, and that doubtful cases should be resolved in favor of the claimant. *Arkansas National Bank of Hot Springs* v. *Colbert,* 209 Ark. 1070, 193 S. W. 2d 806; *Elm Springs Canning Company* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113; *Williams Manufacturing Company* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380; *Peerless Coal Company* v. *Jones,* 219 Ark. 181, 240 S. W. 2d 647.

If this law has any meaning or force or effect, it should be applied here. The judgment of the Circuit Court is affirmed.

Justices HOLT, McFADDIN and GEORGE ROSE SMITH dissent.

GEORGE ROSE SMITH, J., dissenting. Contrary to every pertinent decision of this court the majority opinion views the evidence in this case in the light least favorable to the findings of the Commission. The abundance of substantial evidence supporting the denial of this claim is minimized, characterized as weak, or ignored altogether. Before discussing the evidence I should like to review the rules that govern us in the consideration of appeals like this one.

It was settled by the early case of *J. L. Williams & Sons, Inc.* v. *Smith,* 205 Ark. 604, 170 S. W. 2d 82, that the findings of the Workmen's Compensation Commission are entitled to the same weight as the verdict of a jury. The substantial evidence rule was adopted in that case and has been uniformly followed ever since.

When the findings of the Commission are given the same effect as a jury verdict certain other rules applicable to the review of jury trials come into play and have been invariably followed in the past. One is that the evidence must be viewed in the strongest light in favor of the Commission's findings. *Hughes* v. *Tapley,* 206 Ark. 739, 177 S. W. 2d 429; *Ozan Lbr. Co.* v. *Garner,* 208 Ark. 645, 187 S. W. 2d 181; *Campbell* v. *Athletic etc. Co.,* 215 Ark. 773, 223 S. W. 2d 499. The rule is the same whether the Commission allows or denies the claim. As we said in *Springdale Monument Co.* v. *Allen,* 216 Ark. 426, 226 S. W. 2d 42, where the Commission had rejected the claim: "When we give to the testimony its strongest probative force in favor of the action of the full Commission denying the award, as we must do, we are unable to say that such action was not based on some substantial testimony."

As in the case of a jury, it is for the Commission and not this court to draw inferences and reach conclusions from the facts. *Wren* v. *D. F. Jones Const. Co.,* 210 Ark. 40, 194 S. W. 2d 896. It is likewise the Commission's sole province to arrive at a conclusion of fact when medical testimony is in conflict. It was said in *Ark. Workmen's Comp. Com'n* v. *Sandy,* 217 Ark. 821, 233 S. W. 2d 382: "In the instant case, the medical testimony as to the extent of the claimant's disability was conflicting, and the

Commission evidently chose to accept the report of Dr. Cheairs. The courts are without authority to reverse the conclusion of the Commission in this regard.''

A more detailed statement of the rule as to conflicting medical evidence was made in *Burdine* v. *Partee Flooring Mill,* 218 Ark. 60, 234 S. W. 2d 193: ''We do not have here a case wherein the expert testimony can be held to be uncontradicted: ' ''Moreover, were it conceded that all the expert witnesses introduced in the case agreed upon conclusions as argued by appellant, the jury would not necessarily have to so find the facts to be, because such testimony may be controverted by any other competent evidence.'' *St. Paul Fire & Marine Ins. Co.* v. *Green,* 181 Ark. 1096, 29 S. W. 2d 304. Not only this, but, were it conceded that all the expert testimony offered by both parties was in full accord and agreement and not contradicted by any other expert evidence, yet the jury would not be bound by such testimony. 11 R. C. L., 586, states the rule as follows: ''Even if several competent experts concur in their opinion, and no opposing expert evidence is offered, the jury are still bound to decide the issues upon their own fair judgment.'' ' *Ark. Power & Light Co.* v. *Bollen,* 199 Ark. 566, 134 S. W. 2d 585.''

The pertinent evidence, considered in accordance with the binding rules referred to above, may be divided into two categories: first, the proof relating to the silica hazard to which McKown was exposed, and, second, the medical testimony.

There is direct and positive evidence that McKown was not injuriously exposed to a silica hazard in the Boyd mine. When he went to work for that company in 1938 or 1939 he stated, according to the uncontradicted proof in the record, that his asthma was so bad that he could not work inside the mine. He was therefore given an outside job, at which he worked until 1942.

It was in 1942 that McKown began to work inside the mine. He was, for at least 90% of his time, employed as a pumper, his duty being to tend the pumps that expel water from the mine. There is proof that as a pumper

McKown worked in the wettest, most dust-free parts of the mine, and in addition he was in the indraft of fresh air that was continuously circulated through the mine. The Boyd mine was the first one in the state to be fully equipped with water, which was constantly sprayed upon the cutting machines to keep down harmful dust. The mine was subject to surprise inspections by state, federal, and insurance company representatives; all the reports were commendatory.

Three men, it is true, were awarded compensation benefits for silicosis after having been last employed in the Boyd mine. These men, however, worked in the dusty areas of the mine and may have acquired silicosis before the mine was equipped with water. They were not pumpers and did not work in the favorable conditions that attended McKown's job. The principal testimony indicating that McKown worked for any substantial time where rock was being cut is given by McKown himself. His credibility is open to question. When he resigned his job in 1951 he applied for unemployment compensation, stating (a) that he had been discharged, (b) that he had been replaced by a machine, and (c) that he had applied for work at Camp Chaffee. McKown admitted at a hearing below that all three statements were false and had resulted in fraud charges being brought against him. The Commission was certainly free to discredit McKown's testimony about his exposure to dust and to believe the contrary proof given by unimpeached witnesses.

The foregoing was the background of proof that the Commission had before it in weighing the medical testimony. At the outset I would lay aside the majority's remarks about the qualifications of the doctors, the verification of their reports, and the lack of cross-examination. None of these matters have been or could be raised by the appellee. The procedure before the Commission is informal. Hardly any of the many physicians who testified were asked about their qualifications. Had there been any desire on the part of the claimant to examine the witnesses about their qualifications, to demand that their reports be verified, or to exercise the right of cross-

examination, the issue should have been raised before the Commission. The supposed defect could then have been readily remedied. It is elementary that a litigant, by failing to object, waives irregularities that could be corrected at once if a timely objection were made.

Upon the record only a few positive statements can be made about McKown's condition. He is undoubtedly disabled by reason of shortness of breath and rapid exhaustion upon exertion. He undoubtedly has emphysema of the lungs, which is a condition characterized by a thickening in the walls of the air spaces through which oxygen is absorbed into the blood stream. It is undoubtedly true that repeated X-rays do not show in McKown's lungs the nodules that ordinarily accompany a disabling grade of silicosis.

Emphysema is not itself a disease; it is a secondary result of something else. The pivotal medical issue is whether McKown's emphysema is the result of silicosis or of some other condition. On this point the medical testimony is in irreconcilable conflict; the witnesses themselves concede that certainty is impossible. Dr. Riley summed up the matter by saying that the only absolute method of determining the presence of silicosis is a post-mortem examination.

There are two medical theories concerning the diagnosis of grade II silicosis, which, according to much of the proof, is the lowest disabling grade of the disease. Some authorities believe that this grade can exist even though X-ray films reveal no silicotic nodules. Other authorities, equally respected, believe that such nodules are invariably present when the disease has progressed to the point of disability.

Neither school of thought professes absolute certainty in the matter. Here, for example, even the physicians on whose testimony the majority opinion rests are not nearly so positive as the majority members of this court. Dr. Chamberlain is perhaps as sure of his position as any of the doctors diagnosing McKown's malady as silicosis. He says that grade II can be eliminated, be-

cause the nodules are absent. He is unable to attribute the emphysema to any particular cause; grade I silicosis can, or cannot be present. Dr. Riley made a diagnosis of silicosis, grade II, in April 1952, after having found no evidence of silicosis upon two examinations of McKown in 1951. Both his diagnoses cannot be correct, as it is shown without dispute that the disease could not have originated or progressed between his examinations without continued exposure to silica. A careful study of the record shows that the testimony favoring McKown's claim is just as "weak" as the majority have termed the testimony upon which the Commission chose to rely. McKown, of course, had the burden of proof.

The testimony which the majority dismiss as insubstantial includes the opinions of five physicians, some of whom are unquestionably experts in the field. Dr. Sander, according to the evidence, is a recognized authority. In obtaining his expert opinion the Commission submitted for his consideration the X-rays, the reports of the other doctors pro and con, and all other available material. Upon the basis of all the data in the case Dr. Sander says: "In conclusion, it is my opinion that this man has no evidence of silicosis."

Other testimony supporting the findings of the Commission includes the following: Dr. Rose, a Fort Smith physician who has had forty years of experience with coal miners, states that nodules must be present before a determination of silicosis can be made; he rules out silicosis in McKown's case. Dr. Douglas states that McKown has marked emphysema with no silicosis. Dr. Darnall, who is the only thoracic surgeon in Fort Smith, and who was cross-examined, testified: "I cannot see evidence of silicosis by X-ray and I cannot make a diagnosis of silicosis." Dr. Hornberger is of a similar opinion.

The majority's implication that McKown's emphysema can be explained only upon the assumption that he has silicosis is not supported by the record. Both Dr. Sander and Dr. Hornberger say that the emphysema could be caused by asthma. As Dr. Sander puts it: "The

causes of emphysema are numerous. They include not only long-standing asthma and chronic bronchitis. . . . Every internist sees many cases of severe emphysema in persons who have never had dust exposure in a mine or factory and who have never had the diseases which one commonly thinks of as causes of emphysema." No witness disputes this testimony. For several years prior to 1942 McKown's asthma was so severe that he could not work inside the mine. He admits that he was treated for asthma immediately after he became disabled in 1951. The Commission was at liberty to conclude, on the basis of uncontradicted substantial evidence, that McKown's emphysema is of asthmatic origin. In any event the question is one of fact for the Commission alone.

The majority pay lip-service to the substantial evidence rule by citing some of the cases in which it has been applied. But in this record there is unquestionably substantial proof to show that McKown does not have silicosis. The evidence of exposure preponderates in favor of the appellants. Five skilled physicians affirmatively state that McKown does not have the disease. There are admittedly other causes for the development of emphysema, one of which is shown to exist in McKown's case.

What, then, can be the explanation for the reversal of the Commission's decision upon a question of fact? The answer apparently lies in the final words of the majority opinion, where it is said that compensation cases should be liberally construed and that doubtful cases should be resolved in favor of the claimant. It is undoubtedly true that the compensation law itself should be liberally construed in favor of the workman. It may also be true that the commissioners, within the limits of their consciences, should construe the evidence liberally in the claimant's favor. But if the majority mean that it is reversible error for the Commission to fail to take a liberal view of the evidence in favor of the claim, the decision is demonstrably wrong for several reasons.

First, the authorities elsewhere (we have not passed directly on the point) sensibly reject the view that the

Commission commits reversible error when it does not view the evidence favorably to the employee. To quote a few cases:

"It is of course the settled rule everywhere that these acts are to be liberally construed in favor of the workman; but this does not mean, as counsel seem to argue, that the rule as to the measure of proof, of the sufficiency of evidence, is different from the rule in ordinary cases. The burden is on the plaintiff to reasonably satisfy the trial court that the accident arose out of and in the course of the workman's employment, and where there is any substantial legal evidence in support of the findings of the trial court, the judgment, whether affirmative or negative, will not be disturbed on appeal." *Ex parte Coleman*, 211 Ala. 248, 100 So. 114.

"The act . . . is of course to be liberally construed in furtherance of a legislative purpose to provide compensation for accidental injuries sustained within the scope of its provisions, but the rule of liberal construction has nothing to do with the function of the commission in weighing evidence or in resolving conflicts in the testimony." *Staten* v. *Long-Turner Const. Co.*, Mo. App., 185 S. W. 2d 375.

"The liberality of construction of the Workmen's Compensation Act extends only to the provisions thereof and not to the proof required upon the trial on the merits." *Hinton* v. *Louisiana Central Lbr. Co.*, La. App., 148 So. 478.

"In the case at bar, it must be remembered that workmen's compensation statutes shall be liberally construed, and, also, that that rule does not apply to questions of fact but to matters concerning the construction of the statute, and that the principle does not dispense with the requirement that those who claim benefits under the act must, by competent evidence, prove the facts upon which they rely." *Ehman* v. *Dept. of Labor & Industries*, 33 Wash. 2d 584, 206 P. 2d 787.

Second, the notion that the Commission's findings should be set aside for its failure to view the evidence

with indulgence toward the claimant cannot be reconciled with the long-settled rule that the findings must be upheld if supported by substantial evidence. This case is a perfect illustration. There is undoubtedly substantial evidence to sustain the Commission's decision, but that decision is nevertheless being set aside. Obviously the two theories cannot be harmonized. To enforce the majority's view is to read something into the statute that is not there: a requirement that a double standard of review be applied in the compensation cases. The substantial evidence rule is apparently to be applied when the Commission makes an award; all doubts are then to be resolved in favor of its findings. But when the Commission denies the award—a result that seems to be implied as one reason for having a hearing—the substantial evidence rule no longer applies; all doubts are to be resolved against the Commission's findings. There is no support in the statute or in the cases for such a rule.

Third, and most important, it is clearly wrong to require the Commission to take a biased view of the evidence. If the commissioners are to be responsible for **determining** the facts they must be free to decide issues of credibility and other controverted points of fact in accordance with their own consciences. If they sincerely believe that witness A is lying and that witness B is telling the truth, they must be free to accept B's testimony, whether it is favorable or adverse to the claimant. No self-respecting man would continue to sit upon a tribunal which was required by a higher court to take a prejudiced view of the evidence. Yet that must be the result if this court holds that the commissioners commit reversible error when they fail to show sympathy for the claimant. In the administration of justice it is certainly a new doctrine for a court to declare that the finders of the facts must *not* be fair and impartial, that they must, under penalty of reversal, tip the scales in favor of one of the litigants. I regret that I cannot put into stronger language my conviction that the decision in this case is **wrong.**

HOLT and McFADDIN, JJ., join in this dissent.