MOORE *v.* LONG-BELL LUMBER Co.

5-1388                                   307 S. W. 2d 533

Opinion delivered December 9, 1957.

*Nabors Shaw,* for appellant.

*Shaw, Jones & Shaw,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellant, John D. Moore, filed a claim with the Arkansas Work-

men's Compensation Commission, against appellee, Long-Bell Lumber Company, Inc., for compensation benefits under our Workmen's Compensation Law,— § 81-1301—81-1349, Ark. Stats. 1947,—for an injury received on December 7, 1953 while skidding logs. Long-Bell controverted the claim on the ground that Moore was not in its employ at the time of his injury.

On a hearing before a single commissioner, the claim was denied on a finding by the commissioner that Moore was not an employee of Long-Bell at the time of the injury. The full commission upheld the action of the single commissioner and on an appeal to the Polk Circuit Court that court affirmed the decision of the commission. From the judgment is this appeal.

For reversal appellant says: "It is Moore's contention that he was an employee of Long-Bell when he was injured. It is Long-Bell's contention that Moore was an employee of Harry Vaught, who it is contended was an independent contractor. If Harry Vaught is an independent contractor, then Moore cannot recover from Long-Bell, . . . ." The question presented, says appellant, then "is whether Vaught was an independent contractor, at the time of the injury."

There appears to be little, if any, dispute as to material facts. The commission in its "Statement of the Case" said: "Claimant bases his contention upon the following: That on or about the 2nd day of October, 1953, Mr. Leon Hall, representative of the Long-Bell Lumber Company in the Mena, Arkansas, area, purchased a tract of timber from Mr. Logan Simpson and others; that a timber deed was given by Logan Simpson and others to the Long-Bell Lumber Company; that two checks were given by the Long-Bell Lumber Company, in the amount of $300.00 each, for the payment of said timber; that said timber deed was never recorded. Claimant further contends that Mr. Harry Vaught, who cut and removed the timber, did not have and was not an independent contractor during the removal of the timber, that Harry Vaught was an employee of the Long-Bell Company and that claimant was also an employee.

"Respondent contends that Mr. Harry Vaught was an independent contractor; that it was his business to purchase tracts of timber, cut them, and deliver to various companies in the area; that it is the general practice in the timber industry for a lumber company to finance the man who is cutting and delivering the logs. That in this particular case the tract of timber on the Simpson land was discovered respectively by Mr. Hall and Mr. Vaught. That Mr. Hall arranged with Mr. Vaught to purchase this tract of timber for $600.00. That the timber deed was issued to Long Bell Company merely as a security transaction, to secure the investment that they were making. That the records of the Company show that the $600.00 was charged to Harry Vaught. That as the timber was cut and brought into the yard of the Long-Bell Lumber Company, Vaught was given credit against the indebtedness for each load. That Mr. Vaught hired or contracted with Mr. Columbus Campbell to help in cutting and skidding the logs. That Mr. Campbell in turn hired claimant, John D. Moore, to help him."

Following this statement is what appears to us to be a fair summation of the facts. "Mr. Logan Simpson testified that he made the timber deed out to Long-Bell Lumber Company; that Mr. Hall told him that Mr. Vaught was to get the timber. Mr. Simpson further testified that he supposed he would have held Long-Bell Lumber Company responsible for carrying out the terms of the timber deed.

"Mr. Harry Vaught testified that Mr. Leon Hall, representative of Long-Bell, told him about the Simpson tract of timber; that they went and looked at it together and that he took the deal with the understanding that he would make a profit if and after he had paid back the $600.00 to Long-Bell. That after he had paid back the $600.00 to Long-Bell, he sold some of the timber to another lumber company. That at the time claimant was hurt he had paid back about $300.00 of the $600.00 purchase price to Long-Bell. That he contracted with Mr. Campbell to give him fifteen per cent of the value of

the logs when sold for skidding the logs. That Mr. Campbell hired Mr. Moore, the claimant, to help him and that claimant was paid on a percentage by Mr. Campbell. That when the logs were bought by Mr. Delmer Fair, who testified that he was an independent buyer on the Long-Bell yards, they would deduct one-third or 35 per cent, which would be applied on the $600.00 debt. Mr. Vaught further testified that on one occasion Mr. Hall told him to go back and cut timber on a certain part of the tract, but that at all times he figured he was in charge of the whole operation.

"Mr. Gus Pollard testified that he hauled the timber on this particular job; that he was paid twenty or twenty-five per cent for this hauling. That he was paid most of the time by Mr. Delmer Fair when he delivered the logs; that he was not hired for any particular length of time and could have quit at any time. That he finally did quit the job when he could not make expenses out of it.

"Mr. Columbus Campbell testified that he went to work on the Simpson tract of timber after Mr. Harry Vaught came out to make the arrangements; that he was to get fifteen per cent for skidding the logs and posts; that he needed help to do the job and that he got John D. Moore, claimant, to help him; that he furnished the mules and feed and gave claimant Moore one-fourth of the fifteen per cent that he received. That he could have quit anytime he wanted to and that Mr. Vaught was the foreman of the woods. That he saw claimant get his leg broken on the job while working in the woods on the 7th day of December, 1953. That he quit work before the job was completed.

"Claimant, John D. Moore, testified that Columbus Campbell and Harry Vaught came and asked him to help with the skidding of the timber; that he was to get one-fourth of the fifteen per cent that Mr. Campbell received; that he averaged $25.00 per week working on this particular job. That while pulling a log with a mule the log flew back and hit his leg breaking it; that Mr. Vaught arranged to get him to the hospital in Mena,

Arkansas, that he was treated there and was taken to the Veterans Administration Hospital in Little Rock, Arkansas, for treatment, when Mr. Harry Vaught came back and told him there was no insurance. That he has been receiving treatment since the date of his accident and is still under the care of the Veterans Hospital. Said medical reports having been introduced as evidence into the record.

"Mr. L. O. Moon, Manager of the Three States Lumber Company, at Mena, Arkansas, testified that he bought timber from Harry Vaught during the time that he was working on the Simpson tract of timber. That Mr. Vaught told him that Long-Bell did have an interest in the timber but that he had paid them off. That his company had advanced or put up money for Harry Vaught to work off a timber tract. That this is the normal practice in the lumber industry.

"Mr. Delmer Fair testified that he buys posts and poles; that he operates his business on the Long - Bell Lumber Company yard; that he buys poles and pays for them by his individual check and then when the pole is peeled he sells them to Long-Bell. That when he pays for timber or poles, he gives his personal check and he usually asks how they want the check made out; that he will make out the check to the different ones for the percentages they have in the work. That if he does not get a good grade on the poles he would lose money; that if the poles burned they would be his responsibility until they are sold to Long-Bell. That he deducted the money owed to Long-Bell on the $600.00 debt and paid this over to the Company and then would pay Mr. Vaught for the timber. That on a number of occasions Mr. Vaught would ask him to make out the checks for the different percentages for skidding and hauling and that he would do this to accommodate Mr. Vaught. That he sells poles and posts to other companies other than Long-Bell; that he is not on the payroll of Long-Bell; that he uses his own money to buy poles.

"Mr. Leon Hall testified that he was the manager of the Long-Bell Lumber Company in Mena, Arkansas.

That Mr. Harry Vaught is not an employee of the Company; that Columbus Campbell and claimant, John D. Moore, are not employees of the Company. That he heard that Mr. Simpson had a tract of timber for sale and that he knew Mr. Vaught was not employed and that he had loaned him money in past transactions. That he took Mr. Vaught out to see the tract of timber and told him he could cut this and pay back the $600.00 purchase price and make a profit. That he issued the drafts made payable to Logan Simpson for the tract of land, but on the face of the checks was noted, 'Advanced to H. H. Vaught on timber.' That it was necessary to show an advance to Mr. Vaught so that the home office could set up a charge to Vaught. That he had dealt with Mr. Vaught before and that there was no written agreement on the loan. That the timber deed was taken for security reasons in view of the fact that no written agreement was made. That the Company considered the timber belonged to Mr. Vaught; that they would have held him responsible to pay back the $600.00, and that they have had this happen on other occasions. That he did not have anything to do with the way the timber was cut nor in a supervisory capacity. A ledger sheet was introduced in evidence showing the payments credited to Harry Vaught on the payment of the $600.00 advanced on the Simpson tract. That no social security, unemployment, insurance nor tax deductions were made on claimant or any other men working on the Simpson tract; that they were never paid by any checks drawn on the Long-Bell Lumber Company. That Long-Bell did not furnish any tools, equipment, trucks or any kind of equipment on the Simpson tract. That he did not specifically tell Harry Vaught what sizes to cut from the Simpson tract other than to furnish him with the type of material that the Company was buying at that time, and that this is the common practice to tell a producer.''

As indicated, on the above facts, the commission found that Moore was not an employee of Long-Bell at the time of his injury, but was an employee of Vaught, an independent contractor. Under our well established

rule, since the enactment of our Workmen's Compensation Law, we have consistently held that the findings of the commission are entitled to the same verity as would attach to a jury's verdict and that the circuit court on appeal to it, and this court, must affirm if there is any substantial evidence to support the commission's finding, and we think there was such substantial evidence shown here. See *J. L. Williams & Sons* v. *Smith,* 205 Ark. 604, 170 S. W. 2d 82; *Baker* v. *Silaz,* 205 Ark. 1069, 172 S. W. 2d 419; *Hughes* v. *Tapley,* 206 Ark. 739, 177 S. W. 2d 429; *Fordyce Lumber Company* v. *Shelton,* 206 Ark. 1134, 179 S. W. 2d 464.

In *Wren* v. *D. F. Jones Const. Co.,* 210 Ark. 40, 194 S. W. 2d 896, we used this language: "Under our Workmen's Compensation Law the Commission acts as a trier of the facts—i. e., a jury—in drawing the inferences and reaching the conclusions from the facts. We have repeatedly held that the finding of the Commission is entitled to the same force and effect as a jury verdict. In *Ozan Lumber Co.* v. *Garner,* 208 Ark. 645, 187 S. W. 2d 181, in affirming the finding of the Commission to the effect that the worker was an independent contractor and not an employee, we said: 'We are not concerned here with the preponderance of the testimony. After a careful review of the entire record, we have reached the conclusion that there is substantial evidence presented to support the Commission's finding that appellee, at the time of his injury, was an independent contractor.'" See also *Springdale Monument Co.* v. *Allen,* 216 Ark. 426, 226 S. W. 2d 42.

It appears that no hard and fast rule may be laid down to determine whether a workman is an employee or an independent contractor. Each case must be determined on the facts presented. "The most important test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Whether one is an independent contractor depends upon the extent to which he is, in fact, independent in performing the work. Broadly stated, if the contractor is under the control of the employer, he

is a servant; if not under such control, he is an independent contractor." 27 Am. Jur. 486.

The comparatively recent case of *Lockeby* v. *Ozan Lumber Co.*, 219 Ark. 154, 242 S. W. 2d 115, appears to be directly in point. In this Lockeby Case, which presented a fact situation even stronger in favor of the appellant in that case, we held that the injured employee there, Lockeby, was not an employee of the Ozan Lumber Company when injured, but was employed by an independent contractor. We there said: "Under our decisions, such as *Ozan Lumber Co.* v. *Garner*, 208 Ark. 645, 187 S. W. 2d 181, the facts that we have narrated are sufficient to support the Commission's conclusion that Lockeby was not an employee at the time of his accident. The distinction between an employee and an independent contractor has been well established by our decisions. With knowledge of those decisions the Legislature has not seen fit to broaden the coverage of the Act; instead the statutory definition of an employee has remained unchanged. When the original Act was repealed and a new statute adopted in 1948 the definition of an employee was reenacted verbatim. Ark. Stats. 1947, § 81-1302.

"It is argued, however, that the lumber company's method of operation after 1945 was merely a colorable arrangement to avoid liability for torts and workmen's compensation. No doubt the company was motivated by a desire to reduce its liability in those respects, but that fact is not decisive of the issue. The real question is whether, under the new arrangement, the company actually retained that supervision and control that marks the contract as one of employment, regardless of its form. There is substantial testimony to sustain the Commission's conclusion that such supervision and control were not retained by the company."

We conclude, therefore, that there was substantial evidence to support the commission's finding that Moore was not an employee of appellee when injured. Affirmed.

Justice MILLWEE and Justice ROBINSON dissent.