Ft. Smith Couch and Bedding Co. *v.* Jones.

5-2057                                   332 S. W. 2d 817

Opinion delivered March 7, 1960.

[Rehearing denied April 4, 1960]

*Shaw, Jones & Shaw,* for appellant.

*David T. Westmoreland, Warren O. Kimbrough,* for appellee.

J. Seaborn Holt, Associate Justice. This is a Workmen's Compensation case. Appellee, Mrs. William Adolph Jones, sought compensation for an alleged accidental injury to her husband on November 19, 1957, which she claimed occurred in Colorado Springs, Colorado, while he was in the employment of appellant, Fort Smith Couch and Bedding Company, and handling and unloading furniture for appellant. She further alleged that while so performing his work he "bumped his side or stomach," causing an aggravation to a pre-existing disease, a gangrenous appendix, which caused said appendix to rupture and later resulted in his death. Appellants denied that any accidental injury arose out of the course of Jones' employment and denied that his death came from any cause relating to his employment. A hearing before the referee of the Workmen's Compensation Commission resulted in a finding in favor of appellant, employer, and a denial of appellee's claim.

Upon a review of her claim before the full Commission, the findings of the referee were affirmed and compensation 'denied appellee. On appeal to the Sebastian County Circuit Court, Fort Smith District, the findings of the Commission were reversed and judgment was entered directing the Commission to allow appellee's claim for compensation.

For reversal, appellant stoutly insists that the lower court erred in overruling the decision of the Commission. We have concluded that appellant's contention must be sustained.

In these compensation cases, we have consistently held that when we find any substantial evidence to support the Commission's findings we must affirm those findings. We said in *Springdale Monument Company* v. *Allen,* 216 Ark. 426, 226 S. W. 2d 42: "The rule is firmly established that the findings of the Commission, which is the trier of facts, will not be disturbed on appeal to the Circuit Court if supported by substantial testimony. Act 319 of 1939, § 25b; (Citing many cases) . . . In a long line of decisions since the passage of the act here in question, the rule has been clearly established that the finding of the Commission shall have the same binding force and effect as the verdict of a jury, or of a circuit court sitting as a jury, and when supported by substantial evidence, such findings will not be disturbed by the circuit court on appeal to that court or on appeal to this court. . . . The Commission had the right, just as a jury would have had, to believe or disbelieve the testimony of any witness"; and quite recently, on October 5, 1959, in *White* v. *First Electric Cooperative Corporation,* 230 Ark. 925, 327 S. W. 2d 720, we said: "Under our long established rule, if we find any substantial evidence in the record to support the findings and order of the Commission and the judgment of the trial court, we must affirm. Under our Workmen's Compensation Law the Commission acts as a trier of the facts—*i.e.,* a jury—in drawing the inferences and reaching the conclusions from the facts. We have repeatedly held that the finding of the

Commission is entitled to the same force and effect as a jury verdict", and again on November 9, 1959, we said: "But there is even a stronger rule, namely, our oft repeated holding that if there is any substantial evidence to support the findings of the Commission, we will not disturb such findings. This is the strongest rule in Compensation cases, and the one carrying the greatest weight." *Reynolds Metal Company* v. *Robbins,* 231 Ark. 158, 328 S. W. 2d 489.

The facts here disclose that deceased, employee Jones, was employed by appellant as a cross-country driver — helper — on a furniture delivery van. He left Fort Smith with a companion driver on November 17, 1957, in a "sleeper van", with a trailer loaded with furniture for delivery at various points west. Their first stop was at Rocky Ford, Colorado, where a part of their load was delivered at one stop; then on the 18th they made deliveries at three or four stops in Pueblo, then on to Colorado Springs where they spent the night and unloaded furniture there the next morning. During the night in Colorado Springs, Jones seemed restless and complained about a stomachache. They then went to Denver and after unloading, proceeded to Warner, Oklahoma where they met another company truck which had broken down and they took its trailer for delivery to Perryton, Texas, returning to Fort Smith on the 23rd. It appears that Jones complained intermittently of a stomachache but nothing to show any serious or disabling condition until the 21st. Ed Huggins, the other driver, testified, in effect, that Jones did his work with very little complaint through the 20th and "that Jones made no complaint to him that he had strained or hit himself and never told him about hitting his stomach." Their work consisted of taking shifts with each other in driving and assisting each other in unloading the furniture at the various stops. The furniture consisted of divans, couches, and chairs, the heaviest weighing not more than 120 pounds, and they would never lift more than 50 or 60 pounds apiece, Jones taking one end and he the other. Jones, according to Huggins testimony, did not work from the 21st until

the 23rd when they returned to Fort Smith, Arkansas. When they reached Fort Smith on the afternoon of Saturday, the 23rd, Jones was in such pain that Dr. Hawkins, a local surgeon, was called. He diagnosed appendicitis and operated, finding that the lower two-thirds of the appendix was gangrenous with a hole in it about one-half inch in diameter, and walled off a localized abscess. Following the operation, on November 28th, Jones died. The causes of death were given as pneumonia, wound evisceration, ruptured appendix and obesity. It was Dr. Hawkins firm opinion that the rupture of the appendix occurred sometime within the twenty-four hour period just before he operated. He testified: ". . . From the findings of the localized peritonitis and the amount that he had, it was assumed and I think correctly so, that the perforation of rupture had occurred within a twenty-four hour period." Dr. Olson, in effect, corroborated Dr. Hawkins, testimony. He testified: "Q. In other words, Doctor, in the instance described it is your opinion that the perforation or rupture occurred within a twenty-four hour period prior to the operation or prior to the examination by the physician the first time? A. Yes." Thus it appears from substantial evidence that the perforation or rupture of the gangrenous appendix must have occurred from the inroads of disease and natural causes. It occurred at a time during the twenty-four hour period when Jones was performing no work for appellant whatever.

We conclude, therefore, that there was ample substantial evidence to support the Commission's finding that appellee failed to show that Jones had sustained any accidental injury arising out of and in the course of his employment. The judgment is reversed and the findings of the Commission affirmed.

Reversed.

Johnson, J., dissents.

Jim Johnson, Associate Justice, dissenting. As I understand the Workmen's Compensation Law, it was

passed as a social measure providing that any workman, except in some enumerated circumstances, who suffers an accidental injury during the course of his employment shall receive compensation therefor. This law was supposed to have removed the necessity of proving that the injury was caused by some act or omission constituting negligence on the part of the employer.

As is true in most social legislation, certain of the employee's rights were taken from him when he was given the right to collect for his injuries without proving negligence. The most notable of these rights relinquished was the right to sue an employer in a court of law for damages suffered by an injured employee. Another right relinquished was the right of the employee to have his case tried before a jury of his peers and of course the greatest right relinquished was the right to sue for an unlimited sum commensurate with the injury. The Act limits the liability of the employer. In order to justify in some measure the rights taken away from the employee, the courts from the beginning have adopted the rule that the Act will be broadly and liberally construed in the light most favorable to the claimant and that doubtful cases should be resolved in favor of the claimant. *Boyd Excelsior Fuel Co.* v. *Mckown,* 226 Ark. 174, 288 S. W. 2d 614; *Arkansas National Bank of Hot Springs* v. *Colbert,* 209 Ark. 1070, 193 S. W. 2d 806; *Elm Springs Canning Co.* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113; *Williams Mfg. Co.* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380; *Peerless Coal Co.* v. *Jones,* 219 Ark. 181, 240 S. W. 2d 647. This, in my opinion, not only *is,* but by all rules of fairness and justice, should be the strongest rule in compensation cases. By the very nature of the law itself this rule deserves to carry the greatest weight of any rule in compensation cases.

The majority opinion restates the language used by this Court in *Reynolds Metal Co.* v. *Robbins,* 231 Ark. 158, 328 S. W. 2d 489, as follows: "But there is even a stronger rule, namely, our oft repeated holding that if there is any substantial evidence to support the find-

ings of the Commission, we will not disturb such findings. This is the strongest rule in compensation cases and the one carrying the greatest weight." I was a member of this Court on November 9, 1959, when the *Reynolds Metal Company* opinion, *supra,* was handed down. I agreed wholeheartedly with the results reached in that case. Belatedly, let me confess that I completely overlooked the attempt in that opinion to strenghen the "substantial evidence" rule. It was never my intention then nor is it my intention now to ever become a party to the making of such a rule. If this strengthened rule is allowed to stand, the right to appeal in compensation cases might just as well be abolished. I can think of only one step further in that direction that this Court can be asked to take and that is to contend that if a claim is controverted the mere denial of the claim would amount to such substantial evidence as to justify this Court in affirming the Commission. I cannot escape the feeling that there is something wrong with a rule of this Court that gives a politically appointed Commission's findings so much greater weight than the findings of our learned Chancellors, equal weight with the circuit court and in the case at bar even greater weight than the verdict of a jury. I have been unable to find in the Workmen's Compensation Law a single sentence relative to the construction of the law by this Court. I do find in Section 81-1325(B) the rules set out by which the Circuit Courts must abide. The pertinent parts of that section are as follows:

"The Court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the order or award, upon any of the following grounds, and no other:

"1. That the Commission acted without or in excess of its powers.

"2. That the order or award was procured by fraud.

"3. That the facts found by the Commission do not support the order or award.

"4. That there was not sufficient competent evidence in the record to warrant the making of the order or award."

With the authority thus given The Honorable Circuit Judge in the case at bar after a careful review of the record reversed the Commission. Certainly, he was not only justified but duty bound to reach the conclusion which resulted in his order as follows:

"I overruled the Commission in this case for the following reasons:

It was the claimant's position that exertions of the deceased contributed to the rupture of his appendix and both the claimant's doctor and respondent's doctor agreed that exertion could contribute to cause a rupture. In line with this, our Supreme Court has recognized that the rupture of an appendix may constitute a compensable injury. (Bryant Stave & Heading Co. v. White, 227 Ark. 147 at page 152.) In its opinion the commission disposed of claimant's contention that exertion was the cause of the rupture by stating that 'We fail to find any testimony that would indicate that decedent was called upon to exert any unusual strain.' (Underscoring supplied.) The view that unusual exertion is required is not the law. (Bryant Stave & Heading Co. v. White, supra.) And the statement in the opinion of the commission that they searched the record to find testimony that would indicate an unusual strain evidences that they placed upon the claimant an undue burden in this regard and that their opinion should therefore be set aside.

"Furthermore, the commission seemed to place the burden on claimant of proving that the rupture was due to lifting not less than a certain number of pounds and of establishing with precision the hour of this event both with relation to the time of the rupture and the time the deceased left his job to go home. It is my understanding that the law does not require the claimant to establish his case with mathematical certainty. (Herron Lumber Company v. Neal, 205 Ark. 1093, and Williams v. Gifford-Hill & Co., Inc., 227 Ark. 340). Nor

*does he have to collapse on the job before being entitled
to benefits. (Gunn Distributing Co. v. Talbert, the Law
Reporter, 230 Ark. 442, 323 S. W. 2d 435)."*

It is not necessary to review this case in the light
most favorable to the claimant in order to reach the con-
clusion that the commission was justifiably reversed by
the Circuit Court. I have not only been unable to find
any substantial evidence to support the commission's
findings, I have been unable to find a scintilla of com-
petent evidence to sustain the findings. It is undis-
puted that the deceased employee Jones left Ft. Smith
with a companion driver on November 17, 1957, in a
"sleeper van" trailer truck loaded with heavy furni-
ture, that they were on company business and subject
to call to duty constantly from the time they left Ft.
Smith until they returned on November 23, 1957. That
they spent most of this entire seven days in the truck
either driving, riding or sleeping in the cab bunk. It
is true that Ed Huggins, the companion of the de-
ceased on this fateful trip, testified that the deceased
was in such bad shape from his injury that he did no
work from November 21st until they returned to Fort
Smith on the 23rd. However, the "Log" kept by Hug-
gins and turned in to the company reflected that on No-
vember 21, 1957, deceased was off duty only 3½ hours
out of 24 hours and drove 10½ hours that day. On No-
vember 22, 1957, the "Log" reflected that deceased was
off duty only 4½ hours and on November 23rd, the day
they returned to Fort Smith, deceased drove 1½ hours
and was on duty another ½ hour. These reports made by
Huggins, therefore, appeared to neutralize Huggins' oral
testimony. See: *Bradham Drilling Company* v. *Powell,*
231 Ark. 555, 331 S. W. 2d 35. Even if Huggins' oral
testimony could be accepted as true, can it be said that a
man riding in the cab bunk of a jarring truck owned by his
employer subject to call to duty while on a mission in the
course of his employment and suffers a ruptured appendix,
is not entitled to compensation. The majority opinion says
yes. To the contrary, see: *Ark. Power & Light Co.* v. *Cox,*
229 Ark. 20, 313 S. W. 2d 91. Also see: Larson's Work-
men's Compensation Law, Sections 12.20 and 38.20.

Dr. Hawkins testified that the deceased's case history revealed that on the morning of November 23rd the deceased's right side hurt to walk and it hurt to ride. The Company's records reflect that the big truck on which deceased was working left Ponca City, Oklahoma at 9:00 a.m. and didn't arrive in Fort Smith until 4:30 p.m. The testimony is undisputed that deceased was in great pain when he arrived at Fort Smith; he was operated on and died. On the day deceased was operated on he was on the job in or about his employers' truck subject to duty some 7½ hours and according to the company's own "Log" he performed his usual duties that day. It is undisputed that deceased's regular work included some heavy lifting. The employers' doctor agreed with deceased's doctor that "no one can refute that heavy lifting would increase the intra-abdominal pressure and, if gangrenous appendix was present and about ready to rupture, that such lifting would certainly, in all probability, aid in rupture of that organ." There was absolutely no testimony that riding in a large jarring truck, driving, shifting, breaking and double-clutching such truck, in addition to the lifting required to unload such truck, would not hasten the rupture of this admittedly gangrenous appendix. Certainly common sense dictates that it would. For a case almost on all fours with the case at bar, see: *Clark* v. *Ottenheimer Brothers*, 229 Ark. 383, 314 S. W. 2d 497. This case contains a masterful discussion of the law applicable to cases such as this. Following the law as set out in the *Clark* case, *supra*, is is impossible for me to see how it can be said that the circuit judge erred in reversing the commission. I cannot agree with the theory that our circuit judges are to be treated as mere rubber stamps in compensation cases. To completely ignore their conscientious efforts to correct wrongs of the commission is to ignore the clear language of the law itself. In the present case the Commission clearly erred as a matter of law by demanding of the claimant a greater burden than our law requires. Surely it cannot be said that the

"substantial evidence" rule is now so strong as to erase errors of law.

For the reasons stated above, I respectfully dissent.