REATHER *v.* WARD FURNITURE MFG. Co.

5-3222                                          378 S. W. 2d 201

Opinion delivered May 4, 1964.

*Clinton R. Barry* and *D. L. Grace,* for appellant.

*Harper, Harper, Young & Durden,* for appellee.

ED. F. McFADDIN, Associate Justice. This is the second time this case has been before us. The first appeal was *Ward Furn. Mfg. Co.* v. *Reather*, 234 Ark. 151, 350 S. W. 2d 691. The history of the litigation shows the care that the judicial system has taken in dealing with this claim:

(a) For several years prior to 1956 Mr. Reather was employed by Ward Furniture Manufacturing Company (hereinafter sometimes called "employer"); and on September 26, 1956, while Mr. Reather was at work he suffered a collapse. Some time thereafter Mr. Reather filed a claim for workmen's compensation alleging that he had suffered an accidental injury by breathing dust and that he had become disabled on September 26, 1956.

(b) The claim was controverted; and the Workmen's Compensation Commission (hereinafter called "Commission"), in an opinion dated November 10, 1959, found that Mr. Reather was entitled to compensation; and the employer appealed to the Sebastian Circuit Court.

(c) The Circuit Court, by judgment of January 11, 1960, vacated and set aside the award and remanded the claim to the Commission for further testimony.

(d) Both sides offered additional evidence before the Commission; and on August 31, 1960, the Commission disallowed the claim of Mr. Reather; and he appealed to the Circuit Court.

(e) On December 15, 1960, the Circuit Court vacated the order of the Commission and directed that the case be returned to the Commission for further investigation and evidence. That judgment of the Circuit Court was appealed by the employer to this Court, and resulted in our Opinion in the said case of *Ward Furn. Mfg. Co.* v. *Reather*, 234 Ark. 151, 350 S. W. 2d 691, which affirmed the said judgment of the Circuit Court.

(f) The claim of Mr. Reather then went back to the Commission, which reopened the case for further evidence. In order to make full investigation, the Commis-

sion caused Mr. Reather to be examined by Dr. Grimsley Graham, who was asked by the Commission to answer certain propounded questions. Dr. Graham examined Mr. Reather and answered the questions propounded, and these will be subsequently discussed. Mr. Reather also had an examination by a doctor of his own selection, and offered other medical evidence.

(g) Based on the original record and all of the said supplemental evidence, including the report of Dr. Graham, the Commission, on July 26, 1963, made an order denying any compensation to Mr. Reather and stated that Mr. Reather had not sustained his burden of establishing a causal connection between his employment and his disability.

(h) Mr. Reather appealed to the Circuit Court which, on October 24, 1963, affirmed the order of the Commission; and from the said Circuit Court judgment Mr. Reather prosecutes the present appeal to this Court.

So much for the brief history of the litigation, which extends over a number of years. The decisive question now before us is whether there is substantial evidence in the record to sustain the findings of the Commission in disallowing the claim of Mr. Reather. If so, the Circuit Court judgment was correct and must be affirmed under our long recognized holdings, some of which are: *Lemmer* v. *Chicopee Mfg. Co.,* 233 Ark. 523, 345 S. W. 2d 629; and *Ft. Smith Couch & Bedding Co.* v. *Jones,* 231 Ark. 790, 332 S. W. 2d 817.

It is undisputed that Mr. Reather collapsed while at work for appellee on September 26, 1956. He claimed that he collapsed because of breathing dust while in his place of employment. The question is, whether his work under the conditions existing caused or contributed to his collapse. If so, he is entitled to compensation; but the burden was on Mr. Reather to prove a causal connection between his disabled condition and his employment. *Holland* v. *Malvern Sand & Gravel Co.,* 237 Ark. 635, 374 S. W. 2d 822. The Commission found that

Mr. Reather had failed to prove said causal connection; and we examine now to see if there is substantial evidence in the record to sustain the said finding.

As aforesaid, the Commission caused Mr. Reather to be examined by Dr. Grimsley Graham, a specialist in the field of thoracic and cardio vascular diseases; and the Commission propounded certain questions to Dr. Graham to be answered by him from his examination of Mr. Reather and the information furnished him by Mr. Reather. Dr. Graham made the examination and reported to the Commission in a four-page single spaced typewritten letter, dated June 5, 1962, and to that letter no objections were filed. In answer to one of the Commission's questions, Dr. Graham stated that Mr. Reather was suffering from a pulmonary disease, being bronchiectasis, and that the chest x-ray showed some generalized emphysema and intersticial type fibrosis.

Here is the Commission's second question to Dr. Graham:

"If the claimant is suffering from any pulmonary condition, is there, in your opinion, any causal connection between such pathology and the condition under which the claimant worked?"

And here is Dr. Graham's answer:

"It has been my feeling that bronchiectasis is not caused by any occupational exposure, but usually can be found to begin either in early childhood or during their younger years and may often have its onset at the time of whooping cough, which this man did have as a child, or with pneumonia; and once again this man's condition is consistent with having had pneumonia in 1925 and 1928. I do not believe that his exposure to the dust in any way created any underlying pulmonary pathology." Dr. Graham went on to state that any aggravation of Mr. Reather's condition that might have been caused by exposure to the dust would have ceased once Mr. Reather was removed from such exposure, and that the dust

did not create any change in his already pre-existing disability.

Thus, we have a case in which it was testified by Dr. Graham that there was no causal connection between Mr. Reather's work and his disability. In short, his work for appellee did not cause or aggravate his pre-existing disease or condition. Because of this testimony the Commission disallowed Mr. Reather's claim. Dr. Graham's report is substantial evidence and supports the decision of the Commission, so we have no choice except to affirm the judgment of the Circuit Court, which affirmed the decision of the Workmen's Compensation Commission.

Affirmed.

WARD and JOHNSON, J.J., dissent.

PAUL WARD, Associate Justice, (dissenting). I am dissenting, somewhat reluctantly, in this case because I fear a great injustice is being done to the claimant—reluctantly because it is not easy to point out any plain or specific error that has been committed by the commission or the courts. Very briefly I will attempt to explain my reasons for dissenting.

*One. First Hearing.* The full commission on November 10, 1959 made, in substance, the following findings of fact and law:

(a) Claimant had worked for many years in the presence of dust mixed with glue; he collapsed on September 25, 1956; and he has not been able to work since that time (up to the date of the hearing).

(b) Dr. H. B. Thompson testified: claimant had the most terrific case of asthma he had ever listened to and he sent claimant to Booneville; he was definitely assured that the occupation claimant was following was causing **his trouble.**

(c) The question is: does the testimony of claimant, his wife and Dr. Thompson constitute substantial proof

that claimant sustained an injury arising out of and in the course of his employment; no one denies that claimant became disabled while at work; that he was treated by a physician for a long period of time and that he has never worked at anything since he left his employment on September 25, 1956; it is undisputed that he has a *lung condition;* and so we are of the opinion that claimant has established a compensable injury and that he should be paid.

*Two.* The above opinion by the commission was nullified by the circuit court on January 11, 1960 and the matter was remanded for further development. At the next hearing before the commission the claim was disallowed on August 30, 1960. Again the circuit court sent the matter back for still further development, telling the commission he agreed with them that the new testimony added nothing to the record. To my mind that simply means that the medical testimony was the same as at the time of the first hearing.

*Three.* This appeal comes from the third hearing before the commission when the commission, on the basis of testimony by Dr. G. G. Graham, disallowed the claim. This brings us to the point of considering the effect of Dr. Graham's testimony. He was asked by the commission to answer four questions. The substance of the three pertinent questions and the doctor's answers is set out below.

(1) Q. Is claimant suffering from any pulmonary disease or condition?

A. It is most likely that claimant has bronchiectasis —probably more extensive in the left lung than in the right lung field. To make a definite determination it would require one other examination not made.

(2) Q. If claimant is suffering from any pulmonary condition, is there any causal connection between that and his work?

A. It is my *feeling* that there is not; it *usually* begins in early childhood and it *may* result from whooping

cough (which this man had as a child) or it *may* result from pneumonia (which claimant had in 1925 and 1928); "I do not *believe* that his exposure to the dust in any way *created any underlying* pulmonary pathology at this time; I do *feel*, however, that there was an aggravation of this condition at the time of his exposure to the dust, however, it is *my experience* that once removed from the exposure that this subsides rather readily and would not create any permanent change in the pre-existing condition." (Emphasis supplied.)

(3) Q. If there is any causal relation between claimant's lung pathology and his work, state whether claimant has any disability now and if so, the degree.

A. "I believe this is more or less answered with question two . . ."

*Four.* I have carefully read all of the medical testimony pertaining to the question here involved and I cannot honestly say that I found any statement by any doctor which says plainly and positively that claimant's condition was ont caused or aggravated by the claimant's working conditions. Under the facts and circumstances of this case I believe this would be necessary to comply with what we held in the case of *Hall* v. *Pittman Construction Co.*, 235 Ark. 104, 357 S. W. 2d 263.

"If the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the commission's refusal to make an award."

In the case of *Eddington* v. *City Electric Co.*, 237 Ark. 804, 376 S. W. 2d 550, we said:

"From the above it appears there is no positive medical evidence that claimant's present physical condition was not caused or aggravated by his injury."

The above language undoubtedly would apply with equal force if "working conditions" were substituted for the word "injury".

60

Here we have an able bodied man who worked every day for many years in a thick dust of wood fiber mixed with glue; he suddenly collapses while at work and, after eight years, has been unable to work even one day; no doctor has said he knows for sure that claimant's work did not cause or aggravate his condition. This almost leaves us with a choice between two theories: either claimant became disabled from working 13 years in thick dust or from having whooping cough some 40 years ago. I prefer the logic employed by the biblical blind man who was healed by Christ. When questioned as to how it happened, he replied, ". . . one thing I know, that whereas I was blind, now I see". St. John, 9:25. After reading the two records in this case I feel like saying: whereas, claimant was a well man before September 26, 1956, now (and since that time) he is disabled.

JOHNSON, J., joins in this dissent.